Ricki A. RITT, Plaintiff-Respondent,

v.

DENTAL CARE ASSOCIATES, S.C., Gregory C. Skelding, D.D.S., and St. Paul Fire & Marine Insurance Company, Defendants-Appellants.

Court of Appeals

*No. 94–3344. Submitted on briefs November 10, 1995.—Decided December 28, 1995.*

(Also reported in 543 N.W.2d 852.)

For the defendants-appellants the cause was submitted on the briefs of *Stephen O. Murray* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Gregory R. Wright* of *Gregory R. Wright Law Offices* of Montello.

Before Eich, C.J., Dykman and Vergeront, JJ.

VERGERONT, J. Gregory Skelding, D.D.S., Dental Care Associates, S.C., and their insurer, St. Paul Fire & Marine Insurance Company,[1] appeal from a judgment on a jury verdict finding that Dr. Skelding was negligent in providing dental services to Ricki Ritt. They also appeal from an order in which the trial court found that an offer of settlement submitted by Ritt was a valid offer of settlement. They contend that the trial court: (1) erred in denying their motion for summary judgment on the ground that the action was time

---

[1] The complaint also named Marquette County Department of Health and Social Services as a subrogated defendant, but that party was dismissed before trial. In this opinion, the term "defendants" means Dr. Skelding, Dental Care Associates, S.C., and St. Paul Fire & Marine Insurance Company, unless otherwise indicated.

barred; (2) erroneously exercised its discretion in excluding Dr. Skelding's appointment book as evidence; (3) committed error in awarding Ritt prejudgment interest and double costs; and (4) erroneously exercised its discretion in denying their motion for a new trial based on newly-discovered evidence.

We conclude that the statute of limitations, § 893.55, STATS.,[2] relating to malpractice actions against health care providers, applies to claims against dentists, rather than the personal injury statute of limitations, § 893.54, STATS.[3] Applying § 893.55, we conclude that the trial court's denial of summary judgment was proper, but not for the reason stated by the trial court. We conclude there are factual disputes regarding whether Ritt exercised reasonable diligence in discovering his injury, and whether Ritt commenced his action within five years of the act or omission. We therefore remand for a trial on these issues.

If on remand the timeliness of Ritt's action is resolved in defendants' favor, the remaining issues in

---

[2] Section 893.55(1), STATS., provides:

Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

[3] Section 893.54, STATS., provides:

The following actions shall be commenced within 3 years or be barred:

(1) An action to recover damages for injuries to the person.

(2) An action brought to recover damages for death caused by the wrongful act, neglect or default of another.

this appeal will be moot. However, in the event the jury determines that Ritt timely filed his action, we decide the other issues. We conclude the trial court based its denial of a new trial on an incorrect factor. Therefore, the trial court should exercise its discretion applying the proper legal standard in deciding the defendants' motion for a new trial. We also conclude that the trial court properly exercised its discretion in excluding from evidence the appointment book. Finally, we reverse the order awarding prejudgment interest and double costs to Ritt because we conclude the offer of settlement was not valid under § 807.01(3), STATS.

## BACKGROUND

Ritt filed his complaint on April 6, 1992, claiming that Dr. Skelding was negligent in the dental care he provided beginning in approximately August 1986.[4]

The defendants filed a motion for summary judgment contending that the action was barred by the medical malpractice statute of limitations, § 893.55, STATS., because the action was filed more than three years after the date of injury, § 893.55(1)(a), and more than one year after the injury was discovered or, with reasonable diligence, should have been discovered, § 893.55(1)(b). The trial court denied the motion. It concluded that the applicable statute of limitations was § 893.54, STATS., which requires that an action for injuries to the person be brought within three years. It also concluded that this statute of limitations did not begin to run until July 1991, when Ritt consulted another dentist, Dr. Govoni.

---

[4] Other claims contained in the complaint and amended complaint were dismissed before trial.

Ritt's specific claims at trial were that Dr. Skelding was negligent with regard to: (1) the extraction of his teeth, and (2) subsequent fitting of dentures and lack of follow-up care. The jury returned a verdict that Dr. Skelding did not fail to obtain Ritt's informed consent before extracting Ritt's teeth, but that he was negligent in providing dental services to Ritt. The jury awarded Ritt $6,000 in damages. The parties agree that, given the evidence presented at trial, the verdict means that Dr. Skelding was not negligent with respect to the extraction of Ritt's teeth, but was negligent with respect to the fitting of dentures and follow-up care.

Dr. Skelding's treatment records of Ritt were not produced at trial. Dr. Skelding testified that Ritt's file was inactive and that he had looked in the boxes of closed files in his Princeton office and in his office at home but had not been able to find the treatment records of Ritt. He testified that the file could possibly have been taken by a former partner, Dr. James Greenwald. Dr. Skelding attempted to introduce his appointment book at trial to dispute Ritt's testimony that he (Dr. Skelding) refused to see Ritt after fitting Ritt with dentures. The trial court excluded the appointment book, but permitted the introduction of a written summary of dates pertaining to Ritt's scheduled appointments from the appointment book.

The defendants' motions after verdict included a motion for a new trial on the ground that the trial court erred in excluding the appointment book and on the ground of newly-discovered evidence—Dr. Skelding's treatment records of Ritt. The court denied these motions and entered judgment on the verdict. The court awarded prejudgment interest and double costs, concluding that Ritt's settlement offer of $4,999 met

the requirements of § 807.01(3), STATS., and that the judgment of $6,000 exceeded that amount.

## STATUTE OF LIMITATIONS

In reviewing the trial court's denial of summary judgment, we first consider which statute of limitations applies—§ 893.54, STATS., governing "action[s] to recover damages for injuries to the person," or § 893.55, STATS., governing "action[s] to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider." Since § 893.55 is the more specific of the two, we begin by deciding whether the terms of that statute are met. *Clark v. Erdmann*, 161 Wis. 2d 428, 436-37, 468 N.W.2d 18, 21 (1991). The meaning of a statute is a question of law, which we review de novo. *Id.* at 438, 468 N.W.2d at 22.

In *Clark*, the court held that podiatrists were health care providers within the meaning of § 893.55, STATS. The court reasoned that the term "health care provider," which is not defined in the statute, "plainly applies to anyone who professionally provides health care to others. Podiatrists do exactly that: they provide health care to others; and, like other professional health care providers, they are licensed to practice by the state medical examining board pursuant to ch. 448, STATS." *Clark*, 161 Wis. 2d at 438-39, 468 N.W.2d at 22. The court followed this passage by this footnote:

> Chapter 448, STATS., pertains to the licensing of physicians and physical therapists as well as podiatrists, and to the certifying of occupational therapists, occupational therapy assistants and respiratory care practitioners. *Chapters 446, 447,*

*449, 451, and 455 pertain to the licensing or certifying of other professional health care providers.*

*Id.* at 439 n.5, 468 N.W.2d at 22 (emphasis added). Dentists are licensed under ch. 447, STATS., and thus are included in the term "other professional health care providers" as used in *Clark*.

Ritt argues that *Clark* is distinguishable because Dr. Skelding is not licensed under ch. 448, STATS., as podiatrists are. Chapter 448 is entitled "Medical Practices." However, in view of the footnote we have just quoted, *Clark* cannot be read to limit health care providers under § 893.55, STATS., to those licensed under ch. 448. *Clark* must be read to include those licensed under the statutes listed in the footnote, and that includes dentists.

*Doe v. American Nat'l Red Cross*, 176 Wis. 2d 610, 500 N.W.2d 264 (1993), does not hold otherwise. In *Doe*, the court held that American National Red Cross, a blood bank, was not a health care provider under § 893.55, STATS. The court stated:

> This case is different from *Clark* where we found that a podiatrist was a "health care provider" under sec. 893.55. The Red Cross is not involved in the diagnosis, treatment or care of patients as are podiatrists. The Red Cross is not licensed to practice medicine by the state of Wisconsin or any medical examining board. Likewise, we reject the Red Cross' argument that this case is similar to claims against radiologists or pathologists who have no direct patient contact but fall within the scope of sec. 893.55. The Red Cross is not involved in diagnosing and recommending treatment for patients as are radiologists and pathologists. The conduct of the Red Cross in collecting and selling blood products is akin to the conduct of pharmaceutical manufactur-

ers or suppliers of medical equipment, not health care providers.

*Id.* at 617, 500 N.W.2d at 266.

Ritt points to the references to "licensed to practice medicine" and "medical examining board" in this passage from *Doe* in support of his argument. We are persuaded that *Doe* does not hold that a health care provider under § 893.55, STATS., must be licensed under ch. 448, STATS. The more accurate statement of the *Doe* holding is that the Red Cross is not a health care provider under § 893.55 because it "plays no role in the diagnosis, treatment or care of patients [but rather] is the supplier of a product that is used by health care providers in their treatment of patients." *Id.* at 616-17, 500 N.W.2d at 266 (footnote omitted).

Ritt urges us to look to other statutes that define "health care provider." He refers us to §§ 655.001(8) and 655.002(1)(a), STATS., which read together, define "health care provider" for purposes of the patients compensation fund as a physician or nurse anesthetist. "Physician" is defined as "a medical or osteopathic physician licensed under ch. 448." Section 655.001(10m). The court in *Clark* also considered § 655.001(8), but found it did not exclude a broad definition of "health care provider" under § 893.55, STATS. *Clark*, 161 Wis. 2d at 439, 468 N.W.2d at 22.

Ritt also refers us to § 154.01(3), STATS., which defines a "health care professional" for purposes of ch. 154, entitled "Natural Death," as persons licensed, certified or registered under ch. 441 (Board of Nursing), ch. 448 (Medical Practices) or ch. 455 (Psychology Examining Board). Since ch. 154 relates to the execution, compliance and revocation of declarations relating to persons with terminal conditions, the omission of dentists from this definition does not persuade

us that § 893.55, STATS., should be interpreted similarly narrowly. Moreover, we note that § 154.03(1)(d), STATS., when referring to those persons who may not be a witness to the execution of a declaration, refers to "[a]n individual who is a health care provider, as defined in s. 155.01(7), who is serving the declarant at the time of execution." Section 155.01(7), STATS., which defines "health care provider" for purposes of the chapter entitled "Power of Attorney for Health Care," includes "a dentist licensed under ch. 447," as well as a number of other licensed persons not included in the definition of health care professional in § 154.01(3).

It is apparent, even from the statutes cited by Ritt, that "health care provider" and "health care professional" are defined in different ways in different statutes, depending on the purpose of the statute.[5] The definitions of "health care provider" and "health care professional" in other statutes do not resolve the correct construction of § 893.55, STATS.

There is no definition of "health care provider" in § 893.55, STATS. Absent a statutory definition, we construe words in statutes according to their common and approved usages. *Clark*, 161 Wis. 2d at 438, 468 N.W.2d at 22. We may consult a dictionary for that purpose. *In re Christopher D.*, 191 Wis. 2d 680, 704, 530 N.W.2d 34, 43 (Ct. App. 1995). "Dentistry" is "[t]he medical science concerned with diseases of the teeth,

---

[5] Other statutes in addition to § 155.01(7), STATS., define "health care provider" to include a dentist, but vary as to which other professions are included in the definition. *See, e.g.,* § 146.81(1), STATS. (defining "health care provider" for purposes of patient records); § 146.89(1), STATS. (defining "volunteer health care provider" for purposes of participating in the volunteer health care provider program).

gums, and related oral structures, including the restoration of defective teeth." THE AMERICAN HERITAGE COLLEGE DICTIONARY 372 (3d ed. 1993). As did the court in *Clark* with respect to podiatrists, we conclude that dentists are included in the meaning of "health care provider" under § 893.55.

We now consider whether, applying § 893.55, STATS., summary judgment was properly denied. Section 893.55(1) requires that the action be brought within the later of: (a) three years from the date of injury, or (b) one year from the date the injury was discovered or, with reasonable diligence, should have been discovered, but not more than five years from the date of the act or omission. Since the jury found Dr. Skelding negligent only with respect to the denture fitting and follow-up care, we examine the summary judgment motion only with respect to that claim.

We follow the same methodology as the trial court. *Ervin v. City of Kenosha*, 159 Wis. 2d 464, 479, 464 N.W.2d 654, 660 (1991). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS. The court does not decide issues of fact on a motion for summary judgment, but simply determines if there are disputed issues of fact. *Ervin*, 159 Wis. 2d at 480, 464 N.W.2d at 661. Even if there are no disputed issues of fact, if reasonable alternative inferences can be drawn from the facts, summary judgment is not appropriate. *Id.* at 478-79, 464 N.W.2d at 660.

We first examine the defendants' submissions in support of the motion to determine whether they have made a *prima facie* case for a statute of limitations defense that would defeat Ritt's claim. *See Clark*, 161

Wis. 2d at 442, 468 N.W.2d at 24. The defendants' only submission was a portion of Ritt's deposition. Ritt stated in his deposition that he first saw Dr. Skelding in May 1986. He last saw Dr. Skelding in April 1987. Dr. Skelding extracted his teeth in 1986 and fitted him with upper and lower dentures in early 1987. He first started to experience problems with the dentures about a week after the fitting.

We conclude Ritt's deposition testimony establishes a *prima facie* defense that the claim for negligent fitting of dentures and follow-up care is time barred under § 893.55(1), STATS. It is a sufficient showing that the injury caused by the negligence occurred in early 1987. The action, filed on April 6, 1992, is more than three years after that date. This testimony is also a sufficient showing that Ritt discovered the injury about one week after the fitting, also in early 1987, with the result that the action was filed more than one year after discovery.

We now examine Ritt's affidavit in opposition to the motion to determine if it creates any genuine issues of material fact. Ritt averred as follows. In his deposition, he was confused as to the dates of treatment because he had not yet been able to obtain his dental records from Dr. Skelding in spite of his requests for them. He has since reviewed the dental records of Dr. Govoni, another dentist who treated him, as well as the records of the Marquette County Department of Health and Social Services medical assistance files pertaining to his treatment by Drs. Skelding and Govoni, and that has refreshed his memory. He was treated by Dr. Skelding from April 12, 1986, through the fall of 1987. After he received his dentures, he telephoned Dr. Skelding on several occasions through 1987 with com-

plaints that his dentures were very loose. Dr. Skelding advised him that he had to allow for shrinkage in his mouth and it would take time before the dentures fit appropriately. Because of Dr. Skelding's advice, he believed he needed to be patient and, at some point in the future, the shrinkage in his mouth would occur and his dentures would fit securely. However, this did not occur and he realized the problems were not going to go away. It was at that point he made an appointment with Dr. Govoni on July 30, 1991, for consultation and treatment.

Ritt's affidavit continues:

> I first discovered that I had a claim or cause of action against Gregory C. Skelding for dental malpractice during my treatment with Dr. Govoni on July 30, 1991. It was during that treatment that Dr. Govoni explained to me the failure of Dr. Skelding to professionally provide dental services for me and the negligence of Dr. Skelding in his care and treatment of me by not properly fitting my mouth with upper and lower dentures, failing to fully inform me of the procedures, failing to inform me of alternative treatments, and misrepresenting to me that all of my teeth that were extracted needed to be extracted.
>
> After my first meeting with Dr. Govoni on July 30, 1991, I retained Attorney Gregory R. Wright to represent me involving a dental malpractice claim against Gregory C. Skelding. . . .

■

We first address the defendants' objection to the admissibility, on hearsay grounds, of Dr. Govoni's statements as related by Ritt. According to the defendants, Ritt is offering the statement of another—Dr. Govoni's—for the truth of the matter asserted by Dr.

Govoni, and it is therefore hearsay under § 908.01(3), STATS. We agree that Dr. Govoni's statement is hearsay, and therefore inadmissible, as evidence that Dr. Skelding's treatment was deficient and negligent. However, we conclude that it is not hearsay as evidence that this is what Dr. Govoni told Ritt on July 30, 1991.

The date on which a plaintiff discovers an injury for statute of limitations purposes depends in part on the information he or she has. "If a plaintiff has information that would constitute the basis for an objective belief of [his or] her injury and its cause, [he or] she has discovered [his or] her injury and its cause." *Clark*, 161 Wis. 2d at 448, 468 N.W.2d at 26. For this purpose, *what* Dr. Govoni said to Ritt is relevant but the truth of what he said is not relevant. For example, plaintiffs sometimes offer statements of professionals made to them that their symptoms were not caused by the act or omission of a health care provider in order to prove they did not have information that would constitute an objective belief of their injuries and their causes. These plaintiffs obviously do not offer such statements to prove that the health care provider is not negligent. *See, e.g., Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986); *Claypool v. Levin*, 195 Wis. 2d 535, 536 N.W.2d 206 (Ct. App. 1995), *review granted*, 197 Wis. 2d xv, 542 N.W.2d 154 (Wis. Nov. 14, 1995).

Although Dr. Govoni's statement, according to Ritt, was that Dr. Skelding was negligent, the analysis is the same. The statement is not hearsay and is admissible for the purpose of proving what information Ritt had and when he had it.

The defendants point to our decision in *Fritz v. McGrath*, 146 Wis. 2d 681, 431 N.W.2d 751 (Ct. App. 1988), in support of their argument that Ritt's averment of Dr. Govoni's statement is inadmissible. In

67

*Fritz*, we affirmed a summary judgment that an action alleging negligent dental surgery was time barred.[6] In opposition to the motion for summary judgment, Fritz submitted an affidavit that we described as containing "considerable hearsay discussion regarding other doctors' statements to her" which were "not properly before the court on the motion for summary judgment." *Id.* at 689, 431 N.W.2d at 755. This is the statement the defendants here rely on. However, immediately following this statement, we stated that Fritz's affidavit admitted that Dr. Gabriel, a neurosurgeon, advised her in April 1983 of the possibility that she sustained nerve damage during the dental surgery. *Id.* at 689-90, 431 N.W.2d at 755. We concluded that the information Fritz received from Dr. Gabriel, together with other facts known to her, provided a basis for objectively concluding in April 1983 that the dental surgery was probably the cause of her symptoms. *Id.* at 692, 431 N.W.2d at 756.

In spite of our statement about the hearsay nature of other doctors' statements, we did consider Fritz's averment about what Dr. Gabriel told her to determine what information she received from him. We described that as the "key question." *Fritz*, 146 Wis. 2d at 689, 431 N.W.2d at 755. Therefore, our statement about the hearsay nature of other doctors' statements is dictum, which we now withdraw.[7] *See State v. Lee*, 157 Wis. 2d

---

[6] In *Fritz v. McGrath*, 146 Wis. 2d 681, 431 N.W.2d 751 (Ct. App. 1988), we applied § 893.54(1), STATS. No party raised the issue of whether § 893.55, STATS., applied instead.

[7] We do not intend to suggest that Fritz's averments about other doctors' statements, which we detail in a footnote, *see Fritz v. McGrath*, 146 Wis. 2d 681, 689 n.2, 431 N.W.2d 751, 755 (Ct. App. 1988), are necessarily otherwise admissible.

68

126, 130 n.4, 458 N.W.2d 562, 563 (Ct. App. 1990) (although a published decision of the Court of Appeals is binding on all panels of the court, we may withdraw dictum).

Having concluded that Ritt's averments of Dr. Govoni's statements to him are admissible for purposes of the summary judgment motion, we now consider whether Ritt's affidavit is sufficient to defeat summary judgment. We conclude that it is.

The defendants argue that Ritt discovered his injury in early 1987 because he knew his dentures bothered him one week after he received the dentures. They ignore the averment that Dr. Skelding advised him on several occasions during 1987 that it would take time before the dentures fit properly. Given this averment, we cannot conclude as a matter of law that Ritt discovered or, with reasonable diligence, should have discovered his injury in early 1987. However, we disagree with the trial court that, as a matter of law, Ritt did not discover his injury until July 30, 1991, when he saw Dr. Govoni.

In *Claypool*, we held that even though the plaintiffs immediately believed that a physician's treatment had caused the injury, that was not, as a matter of law, the date of discovery because of the subsequent advice from a lawyer that a doctor or doctors who had reviewed the case for him saw nothing wrong with the treatment. We therefore reversed the grant of summary judgment in favor of the health care provider. However, we also refused to find, as a matter of law, that discovery did not occur until the plaintiffs subsequently consulted with another attorney who advised them that there was a viable claim. *Claypool*, 195 Wis. 2d at 552, 536 N.W.2d at 212. We noted that the issue of reasonable diligence is ordinarily one of fact and we

concluded, based on the record, that the issue had to be tried. *Id.*

We reach that same conclusion here. Ritt did not necessarily discover his injury when the dentures first bothered him, given Dr. Skelding's later statements that it would take time for his mouth to shrink and the dentures to fit. But there remains the question of whether Ritt exercised reasonable diligence in not consulting another dentist until July 1991. It appears the trial court did not analyze this question in denying the summary judgment motion.[8] On this point, the record consists only of Ritt's affidavit, since the defendants did not submit anything in reply. We conclude that Ritt's affidavit gives rise to competing reasonable inferences as to whether Ritt did exercise reasonable diligence in not consulting another dentist until July 1991.

We also conclude that the affidavit creates a factual dispute as to whether the action was brought within five years of the date of the act or omission, the second requirement under § 893.55(1)(b), STATS. Ritt avers in his affidavit that he last saw Dr. Skelding in the fall of 1987 and that he called Dr. Skelding on several occasions through 1987 complaining of loose dentures. Drawing all reasonable inferences in Ritt's favor, these averments are sufficient to raise a factual dispute as to when the last act or omission occurred concerning the claim that Dr. Skelding was negligent in fitting the dentures and providing follow-up care.

The defendants' summary judgment motion should have been denied because, applying § 893.55, STATS., there were material factual disputes as to

---

[8] Ritt's counsel did argue before the trial court that there was a material factual dispute on this point.

whether the action was timely. The denial of summary judgment was correct, although the reason given by the trial court was not.[9] We remand for a trial on the issues of whether Ritt exercised reasonable diligence in dis-

[9] In reviewing the denial of the summary judgment motion, we have considered only the materials submitted before trial in support of, and in opposition to, the motion. The issue of reasonable diligence was not litigated at trial, nor was the five-year limitation. The defendants did bring a post-trial motion, titled a "Motion For Judgment Notwithstanding The Verdict," again raising the statute of limitations issue. The arguments were the same as those presented on the motion for summary judgment, except that the defendants submitted portions of the deposition of Dr. Govoni in which he states that he did not recall telling Ritt at the July 1991 visit that Dr. Skelding was negligent and that it was not his practice to comment on the quality of care provided by other dentists. Dr. Govoni's deposition was taken after the court denied the motion for summary judgment. The deposition was apparently taken because Dr. Govoni was initially going to be Ritt's expert. Defendants submitted these same portions of Dr. Govoni's deposition to the court before trial in opposition to Ritt's motion for modification of the scheduling order.

As the trial court recognized, the post-trial motion was, in effect, a motion to reconsider the denial of summary judgment. The court noted that defendants should have moved for reconsideration of the summary judgment motion before trial, with Dr. Govoni's deposition, but stated that it remained comfortable with its denial of summary judgment. In their brief on appeal, the defendants refer to Dr. Govoni's deposition testimony. Even if it were proper for us to consider his deposition on appeal from the denial of summary judgment, that would not change our conclusion. Dr. Govoni's deposition creates a factual dispute concerning the information he gave Ritt in July 1991. This does not make summary judgment appropriate, but rather adds to the factual disputes that make denial of summary judgment proper.

covering his injury and whether he commenced his action within five years of the act or omission.

## APPOINTMENT BOOK

Defendants contend they are entitled to a new trial because the trial court erred in excluding Dr. Skelding's appointment book. We review a trial court's evidentiary rulings according to the erroneous exercise of discretion standard. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). If a trial court applies the proper law to the established facts, we will not find a misuse of discretion if there is any reasonable basis for the trial court's ruling. *Id.*

Ritt testified at trial that after he received his dentures, he tried to make appointments with Dr. Skelding on and off during 1987 because the dentures were too loose, but either Dr. Skelding or his staff declined to make an appointment to adjust the dentures. In order to dispute that testimony, Dr. Skelding sought to introduce his appointment book, which contained Ritt's name written in at various dates and times, often with abbreviated notations after the entry. Ritt objected to the introduction of the appointment book, contending that it was unfair to admit it since the treatment records had not been produced.

The trial court excluded the appointment book but did permit Dr. Skelding to introduce an exhibit containing a list of dates of scheduled appointments in 1986, 1987 and 1988, taken from his appointment book. The trial court explained that it had no problem with the appointment book insofar as it was evidence that certain appointments were scheduled. However, because of the notations, the court was concerned that

72

the jury might consider it evidence that the appointments actually occurred and the procedures noted were actually performed. In introducing the exhibit listing the appointment dates, Dr. Skelding was permitted to testify that these were the dates from his appointment book for appointments scheduled between him and Ritt.

Defendants argue that the appointment book was admissible as "other evidence of the contents" of the records within the meaning of § 910.04, STATS., because the treatment records were lost or destroyed and the loss did not occur through the bad faith of Dr. Skelding. We do not agree that the appointment book is evidence of the contents of the treatment records insofar as those records relate the treatment actually provided Ritt. As the trial court noted, the entries are not evidence that Ritt actually came in on the scheduled dates and received a particular treatment. The defendants appear to acknowledge that, but argue that the entries in the appointment book "at least show that appointments had been made," contrary to Ritt's testimony at trial. We agree, but that does not make the appointment book "other evidence of the contents" of the treatment records. In his testimony describing his patient records, Dr. Skelding states that they reflect what he did to the patient on any given date that an appointment was kept. There is no testimony that the treatment records show appointments made where the patient did not come into the office.

The appointment book itself is not evidence of the contents of the treatment records, but is itself a record of appointments scheduled. The trial court allowed evidence of those dates, but not the book, for the reasons it explained. The trial court may exclude relevant evi-

dence where its probative value is substantially outweighed by the danger of unfair prejudice. *See* § 904.03, STATS. We do not agree with the defendants that the trial court must specifically make a finding using these exact words. The trial court did consider the probative value of the appointment book, both as to Ritt's treatment and as to the appointments scheduled. It found the appointment book probative as to the latter but not the former. The court determined that the book's admission would suggest that treatments occurred when they might not have occurred, and that would be unfair to Ritt who did not have access to his treatment records, which had been in Dr. Skelding's custody. The alternative exhibit, coupled with Dr. Skelding's testimony, presented the dates of all the appointments for Ritt scheduled in the book. We conclude the trial court properly exercised its discretion.

## OFFER OF SETTLEMENT

Defendants contend that Ritt's offer of settlement did not meet the requirements of § 807.01(3), STATS., because it contained only one offer to all defendants. The offer stated: "The above named plaintiff hereby offers to settle the above entitled action for the sum of $4,999.00 plus costs." Defendants point out that although the interests of Dr. Skelding, Dental Care Associates, S.C., and St. Paul Fire & Marine Insurance Company were aligned, Marquette County Department of Health and Social Services (MCDHSS) was named as a subrogated defendant. The complaint alleged that MCDHSS provided medical assistance payments to Ritt for medical expenses incurred by him in the treatment of injuries he sustained as a result of Dr. Skelding's negligence. The other three defendants contend that since their interests were adverse to the

74

interests of MCDHSS, they were not able to evaluate their own exposure based on the one offer.

Ritt responds that it is clear that the subrogated defendant's lien, if any, would be taken out of any settlement sum paid to Ritt and therefore the other three defendants could evaluate their exposure.

Application of § 807.01(3), STATS., to the facts of this case presents a question of law, which we review de novo. *See Stan's Lumber, Inc. v. Fleming*, 196 Wis. 2d 554, 575, 538 N.W.2d 849, 857 (Ct. App. 1995). Generally, § 807.01(3), together with § 807.01(4), provide that if a plaintiff recovers a judgment more favorable than a properly made offer of settlement which is not accepted within the prescribed time period, the plaintiff is entitled to double the amount of taxable costs and interest on the amount recovered from the date of the offer until the amount is paid.

The trial court found the offer valid because MCDHSS did not materially participate in the proceedings and was dismissed at the outset of the trial. It also noted that the offer was acknowledged at various stages of the proceedings and remained "on the table" through a substantial portion of the proceedings. The court reasoned that if the three defendants were seriously interested in the offer, they could have raised questions earlier.

The standard for determining the validity of an offer of settlement under § 807.01(3), STATS., is whether it allows the offeree to fully and fairly evaluate the offer from his or her own independent perspective. *Testa v. Farmers Ins. Exch.*, 164 Wis. 2d 296, 302, 474 N.W.2d 776, 779 (Ct. App. 1991). Where the offeree is a defendant, a full and fair evaluation entails the ability to

analyze the offer with respect to the offeree's exposure. *Id.* at 302-03, 474 N.W.2d at 779. It is the obligation of the party making the offer to do so in clear and unambiguous terms, and any ambiguity in the offer is construed against the drafter. *Stan's Lumber*, 196 Wis. 2d at 576, 538 N.W.2d at 858.

At the time Ritt's offer was made, and during the ten days within which the offer had to be accepted in order to bring the recovery provisions into play, MCDHSS was a subrogated defendant. Whether it was later dismissed, and on what terms, is not relevant for the purpose of determining the validity of the offer. Similarly, whether the three aligned defendants were inclined to settle at all and whether questions they had about the offer could have been answered earlier, are not relevant to the determination. Double costs and interest are recoverable under § 807.01(3) and (4), STATS., only if the offer is valid. The offer's validity requires an analysis of the offer in the context of the circumstances at the time it was made. In this case, the analysis turns on the relationship among all the named defendants, including MCDHSS.

A single offer of one aggregate settlement figure to multiple defendant tortfeasors is not valid under § 807.01(3) and (4), STATS., because it does not permit each defendant to evaluate the offer from the perspective of that defendant's assessment of his or her own exposure. *Wilber v. Fuchs*, 158 Wis. 2d 158, 164, 461 N.W.2d 803, 805 (Ct. App. 1990). However, where the multiple defendant tortfeasors are jointly and severally liable to a plaintiff and covered by the same insurance policy, and the offer is within the insurance policy's limits, a single offer of an aggregate sum is a valid offer. *Testa*, 164 Wis. 2d at 303, 474 N.W.2d at

779. In this latter situation, the insurer is the offeree and is able to fully and fairly evaluate the offer with respect to its own exposure. *Id.* Under *Testa*, it is clear that one offer to Dr. Skelding, Dental Care Associates, S.C., and St. Paul Fire & Marine Insurance Company was valid. But neither *Wilber* nor *Testa* answers the question of the offer's validity given the presence of MCDHSS, a subrogated defendant.

An insurer who pays a claim on behalf of its insured, under a policy providing for subrogation, has a cause of action against the tortfeasor and the tortfeasor's insurer for its subrogated interest. *Mutual Serv. Casualty Co. v. American Family Ins. Group*, 140 Wis. 2d 555, 561, 410 N.W.2d 582, 584 (1987). In such a situation, the insured and the subrogated insurer each separately own a part of the claim against the tortfeasor. *Id.* Because each separately owns part of the claim against the tortfeasor, a settlement between the insured and the tortfeasor that does not involve the subrogated insurer as a party, or provide for payment of the subrogated interest, leaves unsatisfied the part of the claim owned by the subrogated party. *Id.* In these circumstances, the subrogated insurer still has an enforceable claim against the tortfeasor. *Id.* at 561, 410 N.W.2d at 584.

MCDHSS is not an insurance company, but it is subrogated by statute to the rights of Ritt for medical assistance payments made to him for injuries resulting from any negligence of Dr. Skelding. Section 49.65(2), STATS.[10] A governmental unit to whom this statute applies is not bound by a release between the recipient and the tortfeasor, and any payment to a recipient of

[10] Section 49.65(2), STATS., was renumbered § 49.89(2), STATS., by 1995 Wis. Act 27, enacted July 26, 1995.

assistance in consideration for a release of liability is evidence of the payer's liability to the governmental unit. Section 49.65(8)(a).[11]

Under both the case law defining the rights of subrogated insurers and the statute governing the rights of governmental units paying medical assistance, the subrogated party has rights against the tortfeasor that are separate from the rights of the insured. Ritt's offer did not indicate whether he would pay any sums due MCDHSS from the $4,999 or whether he expected to receive that sum himself, leaving the other three defendants potentially exposed to a claim by MCDHSS. This is in contrast to the offer in *Testa* which provided that Testa would settle her claim for $135,000 excluding medical expenses on which a subrogation claim was being made, or $154,000 including such expenses. *Testa*, 164 Wis. 2d at 299, 474 N.W.2d at 777. In his brief, Ritt states that payment to him of the $4,999 would "settle all claims and liens involved therein," but he does not cite any authority for this proposition. He also states that "plainly the claim of [MCDHSS] would be satisfied from the settlement proceeds," but the offer of settlement does not indicate this. As the offering party, Ritt was responsible for making this clear in order for the offer to be valid.

We conclude that Ritt's offer of settlement was not a valid offer under § 807.01(3), STATS., because it did not allow the three aligned defendants to fully and fairly evaluate their exposure.

---

[11] Section 49.65(8), STATS., was renumbered § 49.89(8), STATS., by 1995 Wis. Act 27, enacted July 26, 1995.

## NEWLY-DISCOVERED EVIDENCE

Dr. Skelding's affidavit in support of his motion for a new trial because of newly-discovered evidence averred that on September 16, 1994, approximately two weeks after the trial, he found a plain brown envelope on the floor of the lobby in his dental office when he entered the lobby. It contained two pages of his clinic records for Ritt and a loose-leaf page on which the following message was typed: "Dr. Greenwald and Garro kept this from you. It was Garro's doing." Copies were attached to the affidavit. The two pages of clinic records contained Ritt's name, began with an entry of April 12, 1986, and ended with an entry of March 30, 1988.

Section 805.15(3), STATS., provides:

> A new trial shall be ordered on the grounds of newly-discovered evidence if the court finds that:
> (a) The evidence has come to the moving party's notice after trial; and
> (b) The moving party's failure to discover the evidence earlier did not arise from lack of diligence in seeking to discover it; and
> (c) The evidence is material and not cumulative; and
> (d) The new evidence would probably change the result.

Each element must be met. *State v. Johnson*, 181 Wis. 2d 470, 489, 510 N.W.2d 811, 817 (Ct. App. 1993). Whether to grant the motion is within the trial court's discretion. *Id.*

The trial court found that Ritt's records were not in Dr. Skelding's possession during the trial. In discussing the requirement of diligence, the court stated:

The question the Court sees in this is whether the newly discovered evidence, that is, the clinical records, can be presented in a form that requires a new trial, and the underlying issue of that goes with the due diligence, whether or not prior to trial this now newly discovered evidence could have, through diligence, been discovered. The Court has some real difficulties with that, in both directions. And by both directions, the Court means that the efforts that Dr. Skelding has put forth may not have been sufficiently diligent as [Ritt's counsel] would present to the Court, but the Court having been informed to some degree through this trial process of the dynamics of Dr. Skelding and Dr. Greenwald, that even with due diligence there may still have been no production of the documents. We now have the ingredient that the records were not necessarily in Dr. Greenwald's possession but were in some way under the control of Dr. Garro. That's further complicated now by the fact that Dr. Garro is not around any longer to provide any amplification of that which gets us back to the speculation about what did happen to the records and just how they did come to be presented so timely after the jury completed its deliberations in this case.

The court then stated that "even beyond diligence" there is "the underlying requirement" of the health care provider to maintain the patient's health care records. The court discussed its view of this obligation at some length. The court reasoned that since Dr. Skelding did not maintain Ritt's records in his possession, whether by inadvertence or intent of, or entanglement with, third parties, the burden of failing to maintain the records should fall on the physician, not the patient.

The court added as "a secondary but not necessarily a significant contributing factor," that since Dr.

80

Garro, who had not previously participated in the trial, was now dead,[12] that might present procedural obstacles to a retrial.

The trial court's primary basis for denying the motion for a new trial was the fact that Dr. Skelding had not maintained Ritt's files in his possession in the first instance. However, the statute speaks to the moving party's "lack of diligence in seeking to discover" the evidence "earlier." Section 805.15(3), STATS. This requires a finding as to Dr. Skelding's diligence, or lack of diligence, in recovering Ritt's medical records for this litigation.

In appropriate circumstances, even though a trial court did not make a particular finding, we may assume that such a finding was made implicitly in favor of its decision. *See State v. Hubanks*, 173 Wis. 2d 1, 27, 496 N.W.2d 96, 105 (Ct. App. 1992), *cert. denied*, 114 S. Ct. 99 (1993). However, we decline to assume a finding that Dr. Skelding did not exercise reasonable diligence in seeking to recover Ritt's records because the trial court explicitly discussed this without coming to a conclusion and then rested its decision on a different basis. And we are unable, as a reviewing court, to make factual determinations. *Wisconsin State Employees Union v. Henderson*, 106 Wis. 2d 498, 501-02, 317 N.W.2d 170, 171 (Ct. App. 1982). Although the drawing of an inference is a question of law where there is only one reasonable inference to be drawn from the evidence, *see Vocational, Technical & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977), on this record there are conflicting reasonable inferences to be drawn from the evidence.

[12] During argument on the motion, Ritt's counsel informed the court that he had learned that Dr. Garro had recently died.

We therefore decide that we must remand to the trial court for a finding as to whether Dr. Skelding's failure to recover Ritt's records earlier arose from a lack of diligence. If necessary to its decision, the trial court should also make findings as to the third and fourth factors under § 805.15(3), STATS.

## SUMMARY

We remand for a trial on the issues of whether Ritt exercised reasonable diligence in discovering his injury and whether he commenced his action within five years of the act or omission. In the event these issues are resolved in Ritt's favor, we direct the trial court to decide defendants' motion for a new trial applying the proper legal standard. If the trial court denies the motion, then the judgment on the verdict is affirmed, and the order granting double taxable costs and interest from the date of the offer of settlement under § 807.01(3) and (4), STATS., is reversed.

*By the Court.*—Judgment affirmed in part and reversed in part; order reversed and cause remanded with directions.