# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP852**

STATE OF WISCONSIN

Cir. Ct. No. **2021SC1439**

**IN COURT OF APPEALS
DISTRICT III**

VLADIMIR KOZUBOVSKY,

   PLAINTIFF-APPELLANT,

 V.

MENOMONIE STREET DENTAL, LLC,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Eau Claire County: SARAH M. HARLESS, Judge. *Affirmed*.

¶1     HRUZ, J.[1] Vladimir Kozubovsky, pro se, appeals an order dismissing his claims against Menomonie Street Dental, LLC ("MSD"). Kozubovsky argues that the circuit court erred by concluding that his claims are

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

barred by the applicable statute of limitations, WIS. STAT. § 893.55(1m). We reject Kozubovsky's arguments and affirm.

## BACKGROUND

¶2      Kozubovsky filed a small claims summons and complaint against MSD on December 10, 2021. He alleged that he was a patient at MSD from 2014 to 2018 and during that time received "extensive dental work from Dr. Eric Carlson." Kozubovsky claimed that Carlson was negligent in performing specific dental procedures on June 16, 2014, February 13, 2015, December 13, 2016, and December 1, 2017, which involved the placement of crowns on various teeth and the placement of a dental implant.

¶3      According to Kozubovsky's complaint, following these procedures, Dr. Bruce Trimble, "an experienced general dentist and dental implant specialist," contacted Carlson by phone on Kozubovsky's behalf. During that conversation, Trimble "describ[ed] all the problems with [Carlson's] restorations and ask[ed] [Carlson] to take responsibility for his actions and issue a refund," but Carlson "denied everything."

¶4      Kozubovsky's complaint further alleged that after Kozubovsky "received a written statement from Dr. Jason Johnson, who is also locally known as one of the best implant specialists," Kozubovsky sent MSD a "detailed email … once again asking for a refund." In that email, which was dated January 6, 2020, Kozubovsky asserted that he had consulted with four dentists—including Trimble and Johnson—who "confirmed [his] concerns" and "unanimously agreed that all the work [Kozubovsky] had done by [MSD] (the implant and the crowns) was substandard" and needed to be "completely re-done." According to the complaint, Kozubovsky subsequently spoke with Carlson by

phone in February 2020, and Carlson disagreed with the other dentists' opinions and defended the quality of his work.

¶5      Kozubovsky's complaint further alleged that in January 2021—eleven months later—Kozubovsky "obtained another evaluation from Dr. Sarah Chambers[,] who corroborated all the issues with the crowns and dental implant." Kozubovsky claimed that Chambers' opinion constituted "conclusive and objective evidence of improper restorations by [MSD]." He therefore asserted that for purposes of the statute of limitations, WIS. STAT. § 893.55(1m), the date of Chambers' evaluation should be deemed "the date [his] injuries were conclusively confirmed."

¶6      MSD moved to dismiss Kozubovsky's complaint, arguing that it was untimely under WIS. STAT. § 893.55(1m). That statute requires a negligence claim against a health care provider to be commenced within the later of:

> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

*See* § 893.55(1m)(a)-(b). MSD argued that Kozubovsky's January 6, 2020 email showed that he was "fully aware of the injuries identified in the [c]omplaint at least as early as January 2020," but Kozubovsky did not file his complaint until December 10, 2021—more than one year later.

¶7      Kozubovsky opposed MSD's motion to dismiss, asserting that the one-year limitations period in WIS. STAT. § 893.55(1m)(b) did not begin to run until he received Chambers' opinion in January 2021 because that opinion

provided "the basis for an objective belief as to [Kozubovsky's] injuries and their cause." Kozubovsky claimed that before receiving Chambers' opinion, he "did not have a basis for an objective opinion" because "[it was] one expert opinion against another expert opinion," and he "wanted to find out more." He also argued that, "from [a] common-sense standpoint," a person should "receive three opinions before you make a decision, before you form [an] objective belief."

¶8      Kozubovsky also cited WIS. STAT. § 893.55(2), which states:

> If a health care provider conceals from a patient a prior act or omission of the provider which has resulted in injury to the patient, an action shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment or within the time limitation provided by sub. (1m), whichever is later.

Kozubovsky argued that this subsection was applicable because Carlson and MSD had "previously maintained that there were no injuries of any kind," which amounted to concealment of Carlson's negligent acts or omissions. In a similar vein, Kozubovsky asserted that because MSD "previously maintained that there were no injuries of any kind and presently claims that all the injuries were already discovered by January 2020, this should serve as admission of guilt by [MSD]."

¶9      The circuit court granted MSD's motion to dismiss. The court explained that under *Clark v. Erdmann*, 161 Wis. 2d 428, 468 N.W.2d 18 (1991),

> all that is required is that the plaintiff knew or should have known that the injury existed and that it may have been caused by the defendant's conduct, and while there must be more than an unsubstantiated lay belief of the existence and cause of the injury on the plaintiff's part, there is no requirement that he or she must have a full and specific "magic word" medical or legal opinion before the statute will be deemed to start running.

> My review of the facts of that case as well as the case law that is cited … does not lead me to conclude that there's a requirement that there's a certain number of doctors that must tell you that you've been injured. The requirement from the case law, as I just cited, is that the plaintiff should have known—or should have known that the injury existed and that it may have been caused by the defendant's conduct.

¶10 Applying this standard to the case at hand, the circuit court concluded that Kozubovsky's January 6, 2020 email showed that Kozubovsky "met with doctors, that [he] knew he was injured, and that doctors confirmed that the injuries had been caused by [MSD]." The court concluded that these circumstances were "sufficient under the case law to start the statute of limitations running." Kozubovsky now appeals.

## DISCUSSION

¶11 "A motion to dismiss tests the sufficiency of a complaint and will be upheld only when there are no conditions under which a plaintiff may recover." *Doe 56 v. Mayo Clinic Health Sys.—Eau Claire Clinic, Inc.*, 2016 WI 48, ¶14, 369 Wis. 2d 351, 880 N.W.2d 681. When reviewing a circuit court's decision on a motion to dismiss, "we construe the pleadings liberally and accept as true both the facts contained in the complaint and any reasonable inferences arising from those facts." *Id.* "If a complaint is not timely filed, the claim is time-barred and dismissal will be upheld." *Id.* Determining whether a complaint was timely filed under the applicable statute of limitations "involves the interpretation and application of a statute to an undisputed set of facts," which presents a question of law that we review independently. *Id.*

¶12 It is undisputed that WIS. STAT. § 893.55(1m) applies to Kozubovsky's claims against MSD. As noted above, that statute required

Kozubovsky to file suit within the later of: (1) three years from the date of the injury; or (2) one year from the date the injury was discovered, or in the exercise of reasonable diligence should have been discovered. *See* § 893.55(1m)(a)-(b). Kozubovsky does not claim that he timely filed suit within three years of any of his injuries under § 893.55(1m)(a). Accordingly, the relevant question is whether he filed suit within one year after the injuries were discovered, or in the exercise of reasonable diligence should have been discovered, under § 893.55(1m)(b).

¶13    Kozubovsky's complaint alleged that after consulting with both Trimble and Johnson, Kozubovsky sent a "detailed email" to MSD "asking for a refund." That email, dated January 6, 2020, asserted that four dentists, including Trimble and Johnson, had "confirmed [Kozubovsky's] concerns" about the quality of MSD's work and "unanimously agreed that all the work [Kozubovsky] had done by [MSD] (the implant and the crowns) was substandard" and needed to be "completely re-done."[2] We agree with MSD and the circuit court that this email clearly shows that Kozubovsky had discovered his injuries by January 6, 2020. Because Kozubovsky did not file suit until December 10, 2021—more than one year after that date—his complaint was untimely under WIS. STAT. § 893.55(1m)(b).

---

[2] Although the January 6, 2020 email was not attached to Kozubovsky's complaint, his complaint contained a summary of his "[r]emediation [a]ttempts," which referred to the email. MSD then attached a copy of the email to its motion to dismiss in accordance with the incorporation-by-reference doctrine. *See Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015) (explaining that a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the document was referenced in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed).

¶14    This analysis is consistent with *Clark*, which the circuit court cited during its oral ruling.  In *Clark*, the defendant podiatrist performed surgery on the plaintiff's foot in 1981.  *Clark*, 161 Wis. 2d at 433.  By 1983, the plaintiff had formed a subjective belief that the surgery was unsuccessful.  *Id.* at 448.  The plaintiff "obtained verification of her injury and its cause when in 1984 and 1985 she was informed to that effect" by two doctors.  *Id.*  The plaintiff alleged, "[U]ntil I saw these doctors … and they told me all this, I knew my foot was in bad shape and surgery … was a failure, but I didn't realize that perhaps it was the [podiatrist's] fault."  *Id.* (first alteration in original).  Under these circumstances, our supreme court concluded that the plaintiff "had the basis for an objective belief by 1985 as to her injury and its cause," and, accordingly, "[t]hat is when she discovered her injury and its cause for purposes of this case."  *Id.* at 448-49.

¶15    Here, Kozubovsky's January 6, 2020 email stated that Kozubovsky had consulted with multiple dentists, who "confirmed" his subjective concerns regarding the quality of MSD's work.  Those doctors "unanimously agreed" that "all the work" MSD had performed on him was "substandard" and needed to be "completely re-done."  Thus, similar to the plaintiff in *Clark*, by January 6, 2020, Kozubovsky had not only a subjective belief that he had been injured by MSD, but "the basis for an objective belief … as to [his] injury and its cause."  *See id.*

¶16    Kozubovsky argues that *Clark* is distinguishable because this case is "more complex" than *Clark*.  He asserts that he "had to investigate four potential injuries instead of just one" and that his injuries "are internal, mostly asymptomatic, and can only be diagnosed by trained professionals using specialized equipment."  This argument is unpersuasive.  Regardless of how many injuries Kozubovsky allegedly suffered or whether those injuries required diagnosis by "trained professionals," Kozubovsky acknowledged in his January 6,

7

2020 email that he had consulted with four dentists who "unanimously agreed" that MSD's work was substandard and needed to be redone. Again, those opinions provided the basis for an objective belief regarding Kozubovsky's injuries and their cause. *See id.*

¶17 Kozubovsky also claims that *Clark* is distinguishable because unlike the plaintiff in that case, he received "conflicting opinions" as to whether he was injured by Carlson's work. More specifically, Kozubovsky asserts that Carlson's denials of any wrongdoing were in conflict with the opinions that he received from the dentists he consulted prior to January 6, 2020. Kozubovsky therefore contends that he did not discover his injuries until he received an additional expert opinion from Chambers in 2021.

¶18 We reject this argument because the test for determining when a plaintiff discovered his or her injury does not depend on the plaintiff having a certain number of expert opinions in support of his or her claim, nor does it depend on those opinions being uncontroverted. To the contrary, the plaintiff need only have the basis for an objective belief regarding his or her injuries and their cause. *See id.* Here, the opinions of the dentists that Kozubovsky consulted prior to January 6, 2020, plainly provided a basis for such a belief, despite the fact that Carlson had denied any wrongdoing.

¶19 In addition, we note that although Kozubovsky received expert opinions prior to January 6, 2020, that created a basis for an objective belief regarding his injuries and their cause, expert opinions are not necessarily required to support such an objective belief. "If a plaintiff has information that would constitute the basis for an objective belief of her injury and its cause, she has discovered her injury and its cause. It does not matter whether her objective belief

8

resulted from information 'officially' obtained from an expert witness." *Id.* at 448. We agree with MSD that

> if a party can be deemed to have discovered his or her injuries even without being specifically advised by an expert that he or she received negligent treatment from a physician, a party that *actually was* so advised—like Kozubovsky in this case—has discovered his or her injuries for purposes of WIS. STAT. § 893.55(1m)(b).

¶20 Next, citing *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140 (1986), Kozubovsky argues that his January 6, 2020 email to MSD "must not be equated to the discovery of his injuries and their cause." (Formatting altered.) As an initial matter, we note that Kozubovsky forfeited his argument based on *Borello* by failing to raise it in the circuit court. *See Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810 ("Arguments raised for the first time on appeal are generally deemed forfeited."). Regardless, the argument also fails on its merits.

¶21 In *Borello*, U.S. Oil installed a furnace in the plaintiff's home in December 1977, and within a few weeks, the plaintiff "complained of a bad odor from the furnace." *Borello*, 130 Wis. 2d at 400. On December 29, 1977, she wrote to U.S. Oil asserting "that her previous furnace problems were aggravated, not alleviated," and complaining of dizziness, headaches, chest pain, and burning in her nose. *Id.* The letter also stated that the plaintiff "had the same fumes and odor after the installation of the … furnace that she had before" and that she "had masonry experts check her chimney to see if the problem lay there, but no masonry defects were found." *Id.* Our supreme court concluded that this letter did not show that the plaintiff "knew the cause of her injuries" in December 1977 because "the most that can be gleaned from the … letter is that she was not able to

attribute her symptoms to the old furnace, the new one, or to any furnace but perhaps instead to some other cause." *Id.* at 400-01.

¶22 Kozubovsky argues that like the plaintiff's letter in *Borello*, his January 6, 2020 email to MSD shows only a "subjective" belief regarding the nature and cause of his injuries. *Borello* is materially distinguishable, however, because the plaintiff in that case had no objective evidence suggesting that her symptoms were attributable to U.S. Oil's installation of her furnace. Here, in contrast, Kozubovsky expressly asserted in his January 6, 2020 email that four dentists had "confirmed" his subjective belief that MSD's work was substandard and needed to be redone. We also reject Kozubovsky's assertion that his email was merely an "emotional response to MSD's unethical behavior" and that we should therefore disregard the statements contained in the email. Regardless of Kozubovsky's emotional state, the email shows that he had a basis for an objective belief regarding his injuries and their cause as of January 6, 2020.

¶23 Kozubovsky also cites *Paul v. Skemp*, 2001 WI 42, 242 Wis. 2d 507, 625 N.W.2d 860, which addressed the issue of when a medical malpractice claim accrues in a case involving an alleged misdiagnosis. *Paul* held that in such a case, "what trigger[s] the statute of limitations [is] not the alleged misdiagnosis, but the injury that resulted from that misdiagnosis." *Id.*, ¶2. Stated differently, no injury occurs until there is an "injurious change" caused by the misdiagnosis. *Id.*, ¶41. Our supreme court has since reiterated that "the determination of a 'physical injurious change' is the appropriate benchmark for establishing the date of 'injury' under WIS. STAT. § 893.55(1m)(a)." *Estate of Genrich v. OHIC Ins. Co.*, 2009 WI 67, ¶17, 318 Wis. 2d 553, 769 N.W.2d 481.

¶24    Again, we note that Kozubovsky forfeited any argument based on *Paul* by failing to raise such an argument in the circuit court. *See Tatera*, 328 Wis. 2d 320, ¶19 n.16.  Furthermore, on appeal, Kozubovsky does not argue that his complaint was timely filed under WIS. STAT. § 893.55(1m)(a), nor does he meaningfully develop an argument that he did not experience a physical injurious change at the time of MSD's allegedly substandard work.  In addition, Kozubovsky does not develop an argument that he was unaware of a physical injurious change at the time that he sent his email to MSD in January 2020, and his complaint did not allege such unawareness.  We need not address undeveloped arguments, and we decline to do so here.  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments or arguments unsupported by references to legal authority).

¶25    Kozubovsky also asserts that the circuit court "erroneously dismissed the impact of the medical opinions that [MSD] provided to" him—namely, Carlson's denials of wrongdoing and defense of his own work.  In support of this argument, Kozubovsky relies on *Ritt v. Dental Care Associates, S.C.*, 199 Wis. 2d 48, 543 N.W.2d 852 (Ct. App. 1995).  There, Ritt asserted a malpractice claim against his dentist, Dr. Skelding, in April 1992 based on Skelding's alleged negligence in fitting Ritt's dentures. *Id.* at 58-59.  Skelding claimed that Ritt's lawsuit was not timely filed, arguing that "Ritt discovered his injury in early 1987 because he knew his dentures bothered him one week after he received the dentures." *Id.* at 69.

¶26    On appeal, we concluded that there were "factual disputes regarding whether Ritt exercised reasonable diligence in discovering his injury." *Id.* at 57. We cited Ritt's affidavit, in which he averred that: (1) after he received his

dentures, he called Skelding on several occasions during 1987 with complaints that the dentures were very loose; (2) Skelding advised Ritt "that he had to allow for shrinkage in his mouth and it would take time before the dentures fit appropriately"; (3) because of Skelding's advice, Ritt "believed he needed to be patient and, at some point in the future, the shrinkage in his mouth would occur and his dentures would fit securely"; (4) the fit of the dentures did not improve, and Ritt therefore consulted with a different dentist on July 30, 1991; and (5) during that appointment, the second dentist informed Ritt that Skelding had failed "to professionally provide dental services" to Ritt and had been negligent in his care and treatment of Ritt. *Id.* at 65-66.

¶27    Given Ritt's averment that Skelding "advised him on several occasions during 1987 that it would take time before the dentures fit properly," we stated we could not conclude "as a matter of law that Ritt discovered or, with reasonable diligence, should have discovered his injury in early 1987." *Id.* at 69. Conversely, however, we also stated that we could not conclude as a matter of law that "Ritt did not discover his injury until July 30, 1991, when he saw" the second dentist. *Id.* We explained:

> Ritt did not necessarily discover his injury when the dentures first bothered him, given Dr. Skelding's later statements that it would take time for his mouth to shrink and the dentures to fit. But there remains the question of whether Ritt exercised reasonable diligence in not consulting another dentist until July 1991 …. We conclude that Ritt's affidavit gives rise to competing reasonable inferences as to whether Ritt did exercise reasonable diligence in not consulting another dentist until July 1991.

*Id.* at 70.

¶28    ***Ritt*** is materially distinguishable from this case. Ritt did not receive an expert's opinion regarding the nature and cause of his injuries until four years after Skelding had advised him that he needed to be patient and that the problems with his dentures would improve over time. Here, in contrast, Kozubovsky consulted with Trimble before Carlson denied any wrongdoing. Furthermore, despite Carlson's denials of wrongdoing, by January 6, 2020, four dentists had "confirmed" Kozubovsky's subjective concerns about Carlson's work, informing him, at that time, that the work was substandard and needed to be redone. Thus, unlike the situation in ***Ritt*** where the facts gave rise to competing reasonable inferences about when the plaintiff could have with reasonable diligence discovered his injuries, the undisputed facts of this case establish as a matter of law that Kozubovsky actually did discover his injuries by January 6, 2020.

¶29    Relatedly, Kozubovsky asserts that his claims should be allowed to proceed under WIS. STAT. § 893.55(2) because MSD "made continuous attempts to mislead [him] and conceal [its] negligent acts and omissions." As MSD notes, however, Kozubovsky does not cite any case "holding that a party acts inappropriately by denying any wrongdoing." Furthermore, even if Carlson's denials of wrongdoing could be characterized as "concealment" for purposes of § 893.55(2), that subsection provides that an action "shall be commenced within one year from the date the patient discovers the concealment or, in the exercise of reasonable diligence, should have discovered the concealment." *See* § 893.55(2). By January 6, 2020, four dentists had told Kozubovsky that Carlson's work was substandard and needed to be redone. At that point, even if Carlson's prior denials constituted concealment of his negligent acts or omissions, it is clear that Kozubovsky had discovered the concealment. Again, Kozubovsky did not file his complaint within one year of January 6, 2020.

13

¶30 Finally, Kozubovsky also contends that because Carlson denied any wrongdoing and defended the quality of his work, MSD should be equitably estopped from asserting that Kozubovsky's claims are untimely under WIS. STAT. § 893.55(1m)(b). Once again, we observe that Kozubovsky forfeited this argument by failing to raise it in the circuit court. *See Tatera*, 328 Wis. 2d 320, ¶19 n.16. In any event, "the test of whether a party should be estopped from asserting the statute of limitations" is whether the party's "conduct and representations" "were so unfair and misleading as to outbalance the public's interest in setting a limitation on bringing actions." *Hester v. Williams*, 117 Wis. 2d 634, 645, 345 N.W.2d 426 (1984) (citation omitted). Based upon the facts alleged in the complaint, we conclude, as a matter of law, that Carlson's denials of wrongdoing and defense of his own work do not rise to that level.[3]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] To the extent Kozubovsky argues that MSD has adopted inconsistent positions by initially denying any wrongdoing but subsequently arguing that Kozubovsky's claims are time barred because Kozubovsky discovered his alleged injuries by January 6, 2020, we reject that assertion. As MSD correctly notes, "[t]here is no tension in MSD's position because a defendant has every right to argue that a claim has not been timely filed and also that, even if the claim were timely, it would fail on the merits." *See, e.g.*, *Paul v. Skemp*, 2001 WI 42, ¶9, 242 Wis. 2d 507, 625 N.W.2d 860 (explaining that "*[n]otwithstanding a dispute on the merits*, a defendant may be entitled to summary judgment by establishing that the action was not filed within the limitations period set forth in the statute of limitations" (emphasis added)).