Dorothy GOFF, Plaintiff-Respondent-Cross Appellant,†

v.

Joy SELDERA, M.D., Defendant-Appellant-Cross Respondent,†

WISCONSIN PATIENTS COMPENSATION FUND, Cross Respondent. [Case No. 95-0135]

Dorothy GOFF, Plaintiff-Respondent,

v.

Joy SELDERA, M.D., Defendant-Appellant,

WISCONSIN PATIENTS COMPENSATION FUND, Co-Appellant. [Case No. 95-1013]

Court of Appeals

*Nos. 95–0135, 95–1013. Submitted on briefs April 16, 1996.—Decided May 29, 1996.*

(Also reported in 550 N.W.2d 144.)

†Petition to review denied.

600

On behalf of the defendant-appellant-cross respondent, Joy Seldera, M.D., the cause was submitted on the briefs of *Donald H. Carlson, Christopher P. Riordan,* and *John P. Rocco* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent-cross appellant, Dorothy Goff, the cause was submitted on the briefs of *Harry F. Worth, Jr.,* of *Godfrey, Neshek, Worth & Leibsle, S.C.* of Elkhorn.

On behalf of the co-appellant cross respondent, Wisconsin Patients Compensation Fund, the cause was submitted on the brief of *Michael J. Pfau* of *Hinshaw & Culbertson* of Milwaukee.

Before Brown, Nettesheim and Snyder, JJ.

NETTESHEIM, J. This case presents two appeals and a cross-appeal resulting from a medical malpractice action in which a jury awarded Dorothy Goff over $1 million in damages against Dr. Joy Seldera. On direct appeal from the judgment, Seldera contends that the statute of limitations barred Goff's action and the trial court improperly informed the jury of the effect of an answer to a special verdict question.[1] We reject Seldera's arguments.

On the cross-appeal, Goff challenges the trial court's postverdict ruling rejecting her motion to add the Wisconsin Patients Compensation Fund (the Fund) as a party to the action and to bind the Fund to the verdict. We uphold this ruling.

Despite rejecting Goff's postverdict motion to add the Fund as a party to the action, the trial court permitted Goff to conduct posttrial discovery as to whether the Fund nonetheless had knowledge of the action.[2] Because the Fund was not timely named as a party to the action and thus could not meaningfully defend at the trial, we reverse the court's order allowing discovery.

## FACTS

On October 5, 1987, Goff, then twenty-three, signed a medical consent form authorizing Seldera to perform an exploratory laparotomy to determine

---

[1] Seldera has appealed from both the judgment and the postverdict orders which were entered on the same day. We treat the postverdict orders as subsumed within the judgment.

[2] On May 26, 1995, we granted the Fund's and Seldera's petitions for leave to appeal the trial court order allowing Goff to conduct posttrial discovery. We also ordered that appeal consolidated with the direct appeal and cross-appeal from the final judgment and orders.

604

whether an ovarian cyst on Goff's left ovary needed to be surgically removed. During the procedure, a tissue sample of the mass was taken and determined by a hospital pathologist to be cancerous.

After receiving the diagnosis from the pathologist, Seldera informed Goff's parents that ovarian cancer was the worst type of cancer. Seldera asked for the parents' consent to perform a complete hysterectomy on Goff because otherwise the surgery would have to be terminated and resumed the following day when Goff's consent could be personally obtained. Not wanting Goff to go through two operations, her parents signed a consent form authorizing the procedure. Seldera then removed Goff's uterus and both ovaries. After the surgery, Seldera informed Goff of the procedure. However, Goff did not learn that her parents had given their consent for the hysterectomy until she obtained her medical records nearly four years later.

After the surgery, Seldera referred Goff to Dr. Edward Prendergast to determine whether Goff needed chemotherapy. On October 26, 1987, the tissue sample was retested by another pathologist. On October 29, 1987, Prendergast informed Goff that the retest revealed only a "borderline malignancy." Goff had follow-up visits with Seldera in 1988, 1989, 1990 and 1991, and all of the tests for cancer came back negative.

In January 1991, Goff watched a telecast of *The Phil Donahue Show* featuring a physician who recited statistics showing that hysterectomies are often unnecessarily performed. *See The Phil Donahue Show: Unnecessary Female Medical Practices* (Multimedia Entertainment, Inc. television broadcast, Jan. 22, 1991). In response, Goff decided to review her medical records, which she obtained on June 24, 1991. In July 1991, Goff retained legal counsel who forwarded the

records to medical experts for an opinion regarding the necessity of the hysterectomy performed in 1987. Dr. Robert C. Knapp provided a report that criticized Seldera's treatment of Goff to Goff's attorney in the fall of 1991. On June 16, 1992, just short of the maximum five-year statute of limitations pursuant to § 893.55(1), STATS., Goff commenced this action against Seldera on the basis of negligence and lack of informed consent.[3]

## TRIAL COURT PROCEEDINGS

Seldera moved for summary judgment, arguing that Goff's claim was barred by the time limitations in § 893.55(1), STATS. This motion was heard by the Honorable Robert J. Kennedy. Following a hearing, Judge Kennedy denied Seldera's motion, concluding that "a material issue of fact exists as to whether [Goff] reasonably discovered her cause of action . . . within one year of the commencement of this action and a special verdict question to that effect will be presented to the jury."

The case proceeded to trial before the Honorable John R. Race. The jury returned a verdict finding that Seldera was negligent in her care and treatment of Goff.[4] The jury fixed Goff's past and future pain and suffering damages at $1,012,534.25. The trial court had previously answered the special verdict questions regarding Goff's past and future medical expenses.

On the statute of limitations issue, the special verdict included the following question: "On what date did

---

[3] Goff initially named two other physicians as defendants; however, they were subsequently dismissed from the action by stipulations of the parties.

[4] Ten members of the jury found that Seldera was negligent in treating Goff; two members answered that Seldera was not negligent.

Dorothy Goff know or should she have reasonably known the nature of her injury and damages?" The jury answered "Oct-Nov 91."

Based on this answer, Judge Race ruled on motions after verdict that Goff's action was timely since she had commenced her action within one year after the time when the jury determined that Goff had discovered her injury. The trial court also denied Seldera's other postverdict motions challenging the jury's verdict and for a new trial. However, the court did grant Seldera's motion limiting Goff's recovery to $300,000 pursuant to § 655.23(4) and (5), STATS. Together with costs and disbursements, Judge Race entered judgment against Seldera in the total amount of $314,879.90.

Following Judge Race's order limiting Seldera's liability to $300,000, Goff filed a motion to amend the complaint to name the Fund as an additional defendant in the action. Judge Race denied Goff's motion relying on § 655.27(5), STATS., which permits recovery "only if the health care provider . . . has coverage under the fund and the fund is named as a party in the action." Nonetheless, on reconsideration, Judge Race allowed Goff to conduct discovery regarding the Fund's knowledge of this action and whether it had previously entered into any indemnification agreement with Goff.

Seldera appeals, renewing her statute of limitations argument. Alternatively, she seeks a new trial in the interest of justice on the basis of a remark included in the trial court's statement to the jury at the opening of voir dire that Seldera's defense to the action included a claim that Goff had not timely filed the action. Goff cross-appeals the trial court's postverdict order denying her motion to amend the complaint to name the Fund as a party and to bind the Fund to the judgment.

607

By separate co-appeal, the Fund and Seldera challenge the trial court's posttrial order allowing further discovery.

## DISCUSSION

### 1. *Seldera's Appeal*

#### a. Statute of Limitations

Seldera first argues that Judge Kennedy should have granted her motion for summary judgment because Goff's action was time barred under § 893.55(1), STATS.[5] Seldera contends that Goff failed to exercise reasonable diligence as a matter of law in discovering her injury. On these same grounds, Seldera also argues that Judge Race should have granted her postverdict motion to dismiss. We address both rulings in a single discussion. However, we focus primarily on the summary judgment ruling of Judge Kennedy because that discussion will answer whether the statute of limitations question was properly submitted to the jury.

---

[5] Section 893.55(1), STATS., provides:

**Medical malpractice; limitation of actions; limitation of damages; itemization of damages. (1)** Except as provided by subs. (2) and (3), an action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of :

(a) Three years from the date of the injury, or

(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered, except that an action may not be commenced under this paragraph more than 5 years from the date of the act or omission.

We employ the same analysis as the trial court in reviewing its denial of summary judgment under § 802.08(2), STATS. *See Ritt v. Dental Care Assocs.,* 199 Wis. 2d 48, 64, 543 N.W.2d 852, 858 (Ct. App. 1995). To prevail on a motion for summary judgment dismissing an action, a defendant must establish a prima facie defense that defeats the plaintiff's claim and demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented. *See Deegan v. Jefferson County,* 188 Wis. 2d 544, 561, 525 N.W.2d 149, 156 (Ct. App. 1994). Any reasonable doubt as to the existence of a genuine issue of material fact is resolved against the party moving for summary judgment. *Park Bancorporation v. Sletteland,* 182 Wis. 2d 131, 141, 513 N.W.2d 609, 613 (Ct. App. 1994).

We agree with Seldera that the evidence in support of her motion for summary judgment presented a prima facie defense that Goff's claim was time barred under § 893.55(1), STATS. *See Ritt,* 199 Wis. 2d at 65, 543 N.W.2d at 858. Seldera's summary judgment proofs establish that in October 1987, shortly after her surgery, Goff learned from Prendergast that the pathology report diagnosed the ovarian mass malignancy as "borderline." Seldera argues that this demonstrates Goff's discovery of her injury, obligating Goff to commence her action within three years.[6] However, even if Goff is not held to that time requirement, Seldera argues that Goff's growing doubts about the necessity for the hysterectomy during her ongoing treatment by Seldera during 1988, 1989, 1990 and

---

[6] Section 893.55(1), STATS., provides that the action must be commenced within the *later* of three years from the date of the injury or one year from the date of the discovery. *Id.*

1991 triggered the running of the statute. And, in any event, Seldera contends that Goff's viewing of the *Donahue* broadcast in January 1991 constituted discovery of her injury, obligating Goff to commence her action within one year thereafter.[7] Since Goff's action was not filed until June 16, 1992, her action would be barred under any of these scenarios. We conclude that these facts show on a prima facie basis that Goff's action was untimely.

Thus, we look to Goff's counter evidence to determine whether it creates any genuine issues of material fact. *See id.* Goff's affidavit indicates that, following the Prendergast consultation, she had follow-up visits with Seldera in 1988, 1989, 1990 and 1991, with her last visit on April 12, 1991. Seldera advised Goff that all the tests performed during this time were negative for cancer. Goff's affidavit states, "[B]ecause I had gone from October 1987 to April 1991 without any reoccurrence of cancer, I began wondering just how serious the cancer actually was at the time of surgery." Her affidavit also states that based on the *Donahue* broadcast and the fact that she had tested negative for cancer for over four years, she decided to obtain her medical records in June 1991. After obtaining her records, Goff sought legal assistance to determine whether the hysterectomy was necessary and ultimately obtained an expert opinion that the surgical procedure was unnecessary.

Pitting Goff's proofs against Seldera's, we conclude that reasonable minds could differ as to when along this time line Goff should be held to have discovered her injury, or should have known through the exercise of reasonable diligence of her injury. We so conclude for

---

[7] Under this scenario, the one-year statute of limitations applies because the *Donahue* broadcast occurred more than three years after the injury. *See supra* note 6.

two principal reasons. First, Prendergast did not advise Goff that she did not have cancer. Rather, he advised her that her cancer was "borderline." Second, Seldera continued to treat Goff postsurgery from 1988 to 1991 to monitor her condition.

Goff was never unequivocally informed that she did not have cancer and that the hysterectomy was unnecessary. If that were so, we would rhetorically inquire why Seldera saw it necessary to monitor Goff's condition for four additional years. Instead, Goff was told that her cancer was "borderline." As a result, she continued in treatment with Seldera to monitor that condition. One fair and reasonable inference from these facts is that Goff believed she had cancer, albeit not as serious as first reported to her, and that the hysterectomy was a necessary procedure. A patient in Goff's position, even if harboring some growing doubts about the necessity of the original procedure, would understandably be more concerned with getting well and attaining (or maintaining) cancer-free status than in pursuing a lawsuit against the health care provider with whom the patient is still treating. As Goff moved along this time line of her recovery, she gradually acquired information which planted the seed of doubt that her hysterectomy might have been unnecessary. When that doubt ripened into discovery of the injury was a jury question in this case.

We appreciate that the law does not always require a person to unequivocally know that an injury has occurred. *See Clark v. Erdmann*, 161 Wis. 2d 428, 448, 468 N.W.2d 18, 26 (1991). Thus, in an appropriate case, an initial suspicion may trigger the discovery or the obligation to exercise reasonable diligence to discover the injury. *See Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 825, 512 N.W.2d 216, 219 (Ct. App. 1994).

However, in another case, a greater degree of certainty may be required. The point is that every case must be judged on its own facts from the standpoint of the reasonable person.

This is not a case in which the summary judgment record allows for but one reasonable conclusion about when Goff should have discovered her injury such that her claim is precluded as a matter of law. Instead, this summary judgment record produces competing reasonable inferences and conclusions. As we have said before, "the issue of reasonable diligence is ordinarily one of fact." *Ritt*, 199 Wis. 2d at 69, 543 N.W.2d at 860. Thus, it was for the jury to make the factual determination.

██

We conclude that Judge Kennedy properly denied Seldera's motion for summary judgment because a material factual issue existed on this question. We likewise conclude that Judge Race properly respected the jury's answer on this question since a reasonable reading of the evidence at the trial supports the jury's finding on this question.[8]

---

[8] Thus, we reject Seldera's claims that Prendergast's remark to Goff of a "borderline malignancy" was "sufficient to constitute actual discovery" and that because Goff did not exercise reasonable diligence from that point, the discovery rule does not apply to this case. *See Awve v. Physicians Ins. Co.*, 181 Wis. 2d 815, 819-20, 512 N.W.2d 216, 217 (Ct. App. 1994). In *Awve,* the court held that the plaintiffs' wrongful death action stemming from a 1988 incident was barred as a matter of law where the plaintiffs consulted with an attorney in January 1991, received an opinion in February 1991 from other physicians that the defendant physician did not exercise the adequate degree of skill, but did not file their claim until May 1992. *Id.* at 820, 512 N.W.2d at 217-18. Based on those facts, the court held as a matter of law that the plaintiffs' initial suspi-

### b. Trial Court's Statement of the Case

At the opening of the jury trial, prior to voir dire, Judge Race made a brief statement summarizing each party's theory of the case. As to Seldera, the judge advised the jury that Seldera denied that she was negligent. In addition, the judge advised the jury that Seldera alleged that "Goff failed to bring this lawsuit in the time required by Wisconsin law."

Seldera immediately moved for a mistrial, contending that the remark constituted an improper judicial statement on the effect of the jury's answer to a special verdict question. In support of her argument, Seldera pointed out that Judge Kennedy in a prior ruling had directed that the challenged remark would not be given as part of the judicial statement of Seldera's case.[9] Judge Race denied Seldera's mistrial motion. Later, the judge confirmed this ruling by rejecting Seldera's postverdict motion for a new trial in the inter-

---

cions in early 1991 triggered an obligation to exercise reasonable diligence to access information within their reach. *Id.* at 825, 512 N.W.2d at 219.

In this case, Goff did not have access to a medical opinion as to whether Seldera's treatment was negligent until 1991. Prendergast never told Goff that the hysterectomy was unnecessary, and when Goff asked Seldera about it days after the surgery, Seldera informed her that there was no other option. The physician who referred Goff to Seldera also opined that the hysterectomy was the correct choice. The date on which a plaintiff discovers an injury depends in part on the information the person has. *Ritt v. Dental Care Assocs.,* 199 Wis. 2d 48, 67, 543 N.W.2d 852, 859 (Ct. App. 1995).

[9] Apparently, Judge Race's copy of the statement of the case had not been edited to conform to Judge Kennedy's earlier ruling.

est of justice. It is this latter ruling which Seldera challenges on appeal.

We give great deference to a trial court's decision on a motion for a new trial because the court is in the best position to observe and evaluate the evidence and proceedings. *See Sievert v. American Family Mut. Ins. Co.*, 180 Wis. 2d 426, 431, 509 N.W.2d 75, 78 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 623, 528 N.W.2d 413 (1995). This is because the decision itself is discretionary, and the trial court is in the best position to observe and evaluate whether such relief is appropriate. *See id.* Thus, the trial court's decision will not be disturbed unless the trial court clearly misused its discretion. *Id.*

It can be reversible error for the court or counsel to inform the jury, either directly or implicitly, of the ultimate result of its verdict. *See Kobelinski v. Milwaukee & Suburban Transp. Corp.*, 56 Wis. 2d 504, 520-21, 202 N.W.2d 415, 425 (1972). The purpose of a special verdict is to have the jury answer each question according to the evidence, not according to the legal effect of the answer. *Cf. id.* at 521, 202 N.W.2d at 425.

Although it may have been preferable if the judge had not made the challenged remark, we are not satisfied that the statement advised the jury of the effect of its special verdict answer. The comment did not allude to the special verdict, a document which was not even proffered to the jury until seven days later. Conversely, the special verdict question did not specifically allude to Seldera's statute of limitations defense about which the judge had spoken seven days earlier. Instead, the verdict inquired when Goff discovered or should have discovered her injury. Moreover, the judge's remark

did not tell the jury what role, if any, the jury would have in resolving this aspect of Seldera's defense. In addition, neither the remark nor the special verdict question advised the jury as to the purpose of the question or the legal significance of the answer. We therefore conclude that Judge Race did not err in the exercise of his discretion when denying Seldera's motion for a new trial in the interest of justice.

We also observe that a jury answer is not rendered improper merely because an intelligent juror might be able to infer therefrom the ultimate effect of his or her answers to the special verdict on the case. *Id.* In this case, it would have taken a legally sophisticated juror to make the connection between the judge's remark which merely summarized the legal stance of a party and the question posed to the jury in the special verdict seven days later. As our foregoing discussion demonstrates, the linkage between the court's remark and the special verdict question was so attenuated, both temporally and substantively, that the remark could not have influenced the verdict.

## 2. *Goff's Cross-Appeal*

Postverdict, Goff moved to amend her complaint to add the Fund as a party to the action. By so doing, Goff sought to obligate the Fund to the amount of the jury award in excess of Seldera's $300,000 limitation of liability. *See generally* § 655.27(1), STATS. The trial court denied the motion because the Fund had not previously been named as a party and, as a result, had not been allowed to defend at the trial.

Goff contends that she was not required to file a claim with the Fund until after she had obtained a favorable final judgment against Seldera. Goff maintains that the Fund's "statutory duty to provide excess

insurance coverage on behalf of Seldera did not arise until <u>after</u> an excess verdict was returned by the jury." She says this is so because: (1) the statute does not specify when the fund must be named in an action; (2) she was prohibited from alleging a specific amount for damages in the damages clause of her complaint under § 655.009(1), STATS.; and (3) Seldera did not assert that her liability was limited to $300,000 until after the verdict.

An amendment to the pleadings is within the trial court's discretion and is proper if the amendment does not come at a time when it is likely to cause unfairness, prejudice or injustice. *Siva Truck Leasing v. Kurman Distribs.*, 166 Wis. 2d 58, 72 n.35, 479 N.W.2d 542, 548 (Ct. App. 1991). Although the question ultimately is whether the trial court properly exercised its discretion, the threshold question involves an interpretation of § 655.27(5)(a)1, STATS., governing claims procedures against the fund. The interpretation of a statute presents a question of law which we review without deference to the trial court's ruling. *State v. Holliman*, 180 Wis. 2d 348, 351, 509 N.W.2d 73, 74 (Ct. App. 1993).

Section 655.27(5)(a)1, STATS., provides that a claimant may recover from the fund "only if . . . the fund *is named as a party in the action.*" (Emphasis added.) In addition, at subsec. (5)(a)3, the statute provides:

> If, after reviewing the facts upon which the claim or action is based, it appears reasonably probable that damages paid will exceed the limits in s. 655.23(4), *the fund may appear and actively defend itself when named as a party in an action* against a health care provider, or an employe of a health care provider, that has coverage under the fund. In such action,

the fund may retain counsel and pay out of the fund attorney fees and expenses including court costs incurred in defending the fund . . . . Any judgment affecting the fund may be appealed as provided by law . . . . [Emphasis added.]

These statutes require the fund to be named as a party as a condition of the fund's liability. It is true that § 655.27(5)(b), STATS., envisions a scenario in which the fund does not actively participate but instead may rely on the statutory obligation of an insurer or self-insurer covered by the fund to "provide an adequate defense of the fund on any claim filed that may potentially affect the fund." However, a logical and progressive reading of the statutes reveals that the fund can only exercise this option if it has been named as an adverse party. The fund can then determine if it wishes to "appear and actively defend itself" under subsec. (5)(a)3, or look to the insurer or self-insurer to defend on its behalf. That process did not occur in this case because Goff never made a claim against the Fund and failed to timely name the Fund as a party in the action.

As a result, the trial court correctly concluded that adding the Fund as a party postverdict deprived it of the important rights conferred by the statutes. For example, the Fund lost its opportunity to "appear and actively defend itself" with counsel of its choice. The trial court also correctly reasoned that the interests of the fund and a health care provider "may not always be united."

If the trial court had granted Goff's request, the Fund would have been unfairly deprived of a timely opportunity to address the issues because they had already been litigated in its absence. *See Johnson v. Chemical Supply Co.*, 38 Wis. 2d 194, 207, 156 N.W.2d

455, 462 (1968). We conclude that the trial court correctly construed and applied the relevant statutes to the facts of this case. As such, the court properly construed the statute and properly exercised its discretion in denying Goff's postverdict motion to add the Fund as a party and to bind it to the excess portion of the jury awards.

### 3. *The Fund and Seldera's Co-Appeal*

Upon reconsideration of Goff's motion to add the Fund as a party, the trial court confirmed its earlier ruling but nonetheless allowed Goff to conduct discovery as to whether the Fund had knowledge of the underlying action. It appears from the tenor of the court's reasoning that if discovery would show requisite knowledge by the Fund of the underlying action, the court might alter its ruling on Goff's motion to amend her complaint to add the Fund as a party and to bind the Fund to the excess portion of the judgment. The Fund and Seldera both seek review of this nonfinal order.

We know of no law holding that a nonparty is bound to a judgment against another simply because the nonparty knew of the litigation. It is axiomatic that a claimant must name as adverse parties those whom it seeks to bind to any adverse judgment.[10] Were the

---

[10] In support of its argument, Goff looks to statute of limitations cases which hold that where a claimant timely commences an action against a health care provider, the fund can later be added as a party even if a statutorily prescribed period of time has expired. *See Tamminen v. Aetna Casualty & Sur. Co.*, 109 Wis. 2d 536, 562, 327 N.W.2d 55, 67 (1982); *see also Geiger v. Wisconsin Health Care Liab. Ins. Plan*, 196 Wis. 2d 474, 482-84, 538 N.W.2d 830, 833-34 (Ct. App. 1995). These cases do not apply to the instant issue because in those cases the belated

law otherwise, serious constitutional questions of due process would exist. We reverse the order allowing posttrial discovery.

CONCLUSION

As to Seldera's appeal, we affirm the trial court's denial of summary judgment to Seldera on statute of limitations grounds. We also affirm the court's order denying a new trial in the interest of justice. As to Goff's cross-appeal, we affirm the trial court's rejection of Goff's motion to add the Fund as a party. As to the Fund and Seldera's discretionary co-appeal, we reverse the trial court's order allowing further discovery.

*By the Court.*—Judgment and orders affirmed; order reversed.

_____

addition of the fund to the action did not deprive the fund of an opportunity to meaningfully participate and defend in the trial court proceedings. As we have noted, that opportunity was lost to the Fund under the facts of this case.