KLOPPENBURG, J.
¶1 Gerald Glumske appeals a summary judgment dismissing his negligence suit against Dr. Sean Yetman and related health providers and insurers.[1] Gerald alleged that Yetman negligently performed heart surgery on his wife, Nancy Glumske, which resulted in her death. Yetman moved for summary judgment on the ground that Gerald's action is time-barred by the three-year statute of limitations for medical malpractice actions contained in WIS. STAT. § 893.55(1m)(a) (2017-18).[2] In response, Gerald contended that his action fell within the "discovery rule" contained in § 893.55(1m)(b), which allows a complaint to be brought within one year from the date a plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the injury complained of. The circuit court determined that Gerald did not exercise reasonable diligence in discovering the alleged negligence and declined to apply the discovery rule. The court then granted summary judgment to Yetman, dismissing the complaint. As we explain, we conclude that there are competing reasonable inferences from the undisputed facts in this case that require a jury to determine whether Gerald exercised reasonable diligence to determine the cause of Nancy's death. Accordingly, we reverse and remand to the circuit court for further proceedings.
BACKGROUND
¶2 The facts presented here and in the discussion section below are drawn primarily from the deposition and affidavit of Gerald Glumske. They are uncontested for the purposes of this appeal.
¶3 Gerald and Nancy Glumske were spouses. In July 2011, Yetman performed surgery on Nancy to replace her mitral heart valves. Based on conversations with Yetman and on Nancy's independent research, both Gerald and Nancy expected that the surgery would enable Nancy to return to an active lifestyle by increasing the oxygen in her bloodstream, though they also knew that the surgery did entail a low risk of death. Following the surgery, Yetman came to the waiting room and told Gerald that he had not replaced Nancy's heart valves. Gerald then asked Yetman why he had not replaced the valves, and Yetman did not answer. Gerald asked no further questions of Yetman after the surgery regarding why the valves had not been replaced. Either in the waiting room or a few hours later in Nancy's intensive care unit room, Yetman did tell Gerald that "every time he touched a valve, it would flake away."
¶4 Nancy's condition deteriorated in the weeks following the surgery. A breathing tube in her throat prevented Nancy from speaking, her body remained swollen, and she was confined to her hospital bed. Approximately two weeks after the surgery, Nancy's kidneys and liver began to fail. Neither Yetman nor any other medical personnel explained to Gerald why Nancy's kidneys and liver were failing; nor did Gerald ask. Approximately four weeks after the surgery, Nancy died.
¶5 Shortly after Nancy's death, Gerald requested Nancy's medical records because, in his own words, he "wanted to maybe find out why the procedure was never done" and because he was surprised that she had died following the surgery. Specifically, he wanted to find out why Yetman had not replaced Nancy's heart valves because "Dr. Yetman never explained to me why he didn't do it, and I thought maybe if - if there might be something in there or may not. I - you know, I had no knowledge of it, but I was trying to find out what was going on ...." Gerald ultimately did not procure a copy of Nancy's medical records because he could not afford the cost.
¶6 Gerald took no further action regarding Nancy's hospitalization and death until 2016. In January of that year, Gerald read a newspaper article on medical disciplinary practices which reported that the hospital that employed Yetman had fired Yetman following two unsuccessful procedures, including Nancy's. The article reported that according to medical board records: (1) Yetman had left Nancy on a heart bypass machine for too long, which caused her kidney and liver failures and, ultimately, her death; and (2) Yetman should have replaced Nancy's heart valves with an artificial device, rather than attempting to repair them. According to the article, the hospital fired Yetman in October 2011 after hiring a consultant to review records of the seven patients he had operated on during his time at the hospital. The article also reported that the Wisconsin Medical Examination Board learned of Yetman's termination in 2013 and accepted the surrender of his medical license in 2014.
¶7 Gerald filed this action on July 12, 2016. Pertinent to this appeal, the complaint alleged that Yetman had provided negligent care by keeping Nancy on the heart bypass machine for too long and improperly trying to repair her mitral valves, rather than replacing them.[3] Yetman moved for summary judgment, arguing that the action fell beyond the three-year statute of limitations in WIS. STAT. § 893.55(1m)(a). In response, Gerald contended that the complaint fell within the one-year statute of limitations under the discovery rule in § 893.55(1m)(b), since he had only discovered the injury when he read the newspaper article in January 2016 and filed the complaint within one year of that discovery. The circuit court declined to apply the discovery rule because it determined that the only reasonable inference from the undisputed facts was that Gerald did not exercise reasonable diligence in discovering the cause of Nancy's death. Accordingly, the court entered summary judgment dismissing the complaint. Gerald appeals.
DISCUSSION
¶8 As we explain, we conclude that there are competing reasonable inferences from the undisputed facts in this case that require a jury to determine whether Gerald exercised reasonable diligence to determine the cause of Nancy's death.
I. APPLICABLE SUMMARY JUDGMENT STANDARDS
¶9 We review the circuit court's entry of summary judgment de novo, applying the same methodology as the circuit court. Cole v. Hubanks , 2004 WI 74, ¶5, 272 Wis. 2d 539, 681 N.W.2d 147. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. WIS. STAT. § 802.08(2). In summary judgment, a court "decides whether there is a genuine issue of material fact; the court does not decide the fact." Midwest Neurosciences Assocs. v. Great Lakes Neurosurgical Assocs. , 2018 WI 112, ¶80, 384 Wis. 2d 669, 920 N.W.2d 767 (quoted source omitted).
¶10 Here, Yetman is the moving party and, as such, "bears the burden of establishing the absence of a genuine, that is, disputed, issue of material fact." Id. In Goff v. Seldera , 202 Wis. 2d 600, 550 N.W.2d 144 (Ct. App. 1996), the defendant physician argued (as in this appeal) on summary judgment that a plaintiff did not exercise reasonable diligence as required by WIS. STAT. § 893.55(1m). Goff , 202 Wis. 2d at 609. In ruling on the physician's motion, this court held that the physician must "demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented." Id.
¶11 We review summary judgment materials "in the light most favorable to the non-moving party." Midwest , 384 Wis. 2d 669, ¶80. Also, "[t]he rule of law remains that if more than one reasonable inference can be drawn from the undisputed facts, summary judgment is not appropriate." Schmidt v. Northern States Power Co. , 2007 WI 136, ¶47, 305 Wis. 2d 538, 742 N.W.2d 294. Summary judgment must not be granted if "a reasonable jury could return a verdict in favor of the nonmoving party." Id. , ¶24. "Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against" the party moving for summary judgment. Id. (quoted source omitted); see also Midwest , 384 Wis. 2d 669, ¶80 ; Goff , 202 Wis. 2d at 609.
¶12 Wisconsin law recognizes that, in the medical malpractice context, "[t]he issue of reasonable diligence is ordinarily one of fact." Spitler v. Dean , 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989). Thus, the issue is usually submitted to a jury rather than decided on summary judgment. Id. ; Sawyer v. Midelfort , 227 Wis. 2d 124, 157, 595 N.W.2d 423 (1999) ; see also Gumz v. Northern States Power Co. , 2007 WI 135, ¶49, 305 Wis. 2d 263, 742 N.W.2d 271.
II. APPLICABLE LAW RELATING TO REASONABLE DILIGENCE
¶13 The statute of limitations in WIS. STAT. § 893.55(1m) in relevant part reads as follows:
[A]n action to recover damages for injury arising from any treatment or operation performed by ... a person who is a health care provider ... shall be commenced within the later of:
(a) Three years from the date of the injury, or
(b) One year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered ....
Section 893.55(1m).
¶14 It is undisputed here that Gerald filed the complaint more than three years after the alleged injury. Thus, the sole issue on appeal is whether the complaint was timely filed under the "discovery rule" in WIS. STAT. § 893.55(1m)(b), which provides that a complaint may be brought within "[o]ne year from the date the injury was discovered or, in the exercise of reasonable diligence should have been discovered ...." Id .
¶15 Whether a party has exercised reasonable diligence is tied to the facts of each case. See Goff , 202 Wis. 2d at 612 ("The point is that every case must be judged on its own facts from the standpoint of the reasonable person."). "[T]he test is whether a reasonable person under the same or similar circumstances as the plaintiff should have discovered his injury and its cause." Carlson v. Pepin Cty. , 167 Wis. 2d 345, 353, 481 N.W.2d 498 (Ct. App. 1992) (emphasis added). So, the "reasonable person" mentioned in the applicable test must be considered to be in the same circumstances in which Gerald found himself.
¶16 "[I]n an appropriate case, an initial suspicion may trigger the discovery or the obligation to exercise reasonable diligence to discover the injury. However, in another case, a greater degree of certainty may be required." Goff v. Seldera , 202 Wis. 2d 600, 611-12, 550 N.W.2d 144 (Ct. App. 1996) (internal citation omitted). Importantly, a court must consider whether Gerald had available to him information relevant to his exercise of reasonable diligence. "We do not expect the ordinary person alleging physical injuries to take extraordinary steps to secure a full medical analysis. However, '[p]laintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach. ' " Awve v. Physicians Ins. Co. , 181 Wis. 2d 815, 824, 512 N.W.2d 216 (Ct. App. 1994) (internal citations and quoted sources omitted) (emphasis added).
III. ANALYSIS
¶17 Yetman argues that he is entitled to summary judgment because there is only one inference that can be reasonably drawn from the undisputed facts here. According to Yetman, the only reasonable inference is that Gerald failed to exercise reasonable diligence because he made no effort to access any further information regarding the cause of Nancy's death, and that had Gerald exercised such reasonable diligence he would have discovered Yetman's negligence as early as the date of Nancy's unsuccessful surgery in July 2011 or her death in August 2011, and certainly more than one year before the complaint was filed in July 2016.
¶18 Gerald concedes that Yetman's proposed inference is reasonable, but argues that there is a second reasonable inference. Namely, he argues that an objectively reasonable person exercising reasonable diligence would view Nancy's death as a "normal" death due to complications from heart surgery and would "have had no suspicions regarding his wife's death [and] no reason to investigate it, and would in turn not do so," until reading the newspaper article about Yetman in January 2016. As we explain, we agree with Gerald.
A. Undisputed Facts
¶19 We begin with the facts that were known to Gerald at the time of Nancy's death in mid-August 2011. Before the surgery, Nancy led an active lifestyle, but her health history also included the following: (1) Nancy had one of her veins from her heart removed in 2000, resulting in the loss of blood supply to and loss of function of her lower left lung; (2) Nancy had a pacemaker installed in 2000 to address a history of atrial fibrillation ; (3) in 1999, Nancy began receiving Social Security disability payments because her atrial fibrillation made it impossible for her to work; (4) Nancy was a smoker; and (5) in the year before the surgery Nancy gradually became less active and tired more easily.
¶20 Nancy opted to undergo heart valve replacement surgery in order to remedy the fatigue she had been experiencing and in the hope of returning to her former active lifestyle. The surgery entailed some risk of death.
¶21 Following the surgery, Nancy's condition not only failed to improve, but rapidly deteriorated. She exited the surgery unable to speak because of a breathing tube in her throat, unable to move because of the swelling in her body, and confined to a hospital bed. The purpose of the surgery-the replacement of Nancy's heart valves-had not been accomplished, and Yetman did not respond to Gerald's question why. Nancy died four weeks after the surgery after suffering two distinct organ failures, neither of which were ever explained to Gerald.
B. Whether Gerald Exercised Reasonable Diligence
¶22 We now address and reject Yetman's arguments why these undisputed facts yield only the single reasonable inference that Gerald failed to exercise reasonable diligence in investigating the cause of Nancy's death. Yetman directs his arguments at what he asserts Gerald unreasonably failed to do after the surgery but before Nancy died, and at what he asserts Gerald unreasonably failed to do after Nancy's death. As to both sets of arguments, Yetman as the movant was obliged to show that the information he asserts a reasonable person would have accessed was reasonably accessible to and within Gerald's reach during each of those two time periods. See Spitler , 148 Wis. 2d at 638. As we explain, Yetman has failed to make that showing.
1. After Nancy's Surgery
¶23 First, Yetman argues that, faced with silence on such fundamental questions as why the valve replacement had not been accomplished and why Nancy's health deteriorated and failed after the surgery, a reasonable person in Gerald's position would have made inquiries of Yetman and other medical providers at the hospital after Nancy's surgery. As Yetman puts it, a reasonably diligent person would ask Yetman "as many times as necessary until he got a satisfactory answer for why his wife was in the ICU with her chest open following an aborted procedure that was expected to return her to good health." The hole in Yetman's argument is that there is a reasonable inference from the undisputed facts that such information was not reasonably accessible to or within reach of Gerald before Nancy died.
¶24 Yetman neither makes any argument nor points to anything in the record that shows that Gerald had any legal right to demand any information from Yetman, or from any other medical provider, while Nancy was alive. More particularly, Yetman does not contend that Nancy granted the right to Gerald to obtain information about her medical condition through a Health Care Power of Attorney or any other instrument. For that reason, on this record, a reasonable inference is that a reasonable person in Gerald's position would have believed that he did not have the right to demand any further information from Yetman or any other health care provider while his wife was still alive.
¶25 Moreover, Gerald asked Yetman once for pertinent information and received no answer. A reasonable inference that can be drawn from that fact is that Yetman was not going to tell Gerald anything about what happened during the surgery or why Nancy was in the condition she was in. There is nothing from Yetman stating that, if asked again, he would have explained all to Gerald. Further, there is nothing from any other medical providers indicating that they would have given Gerald information if asked. A reasonable inference is that a reasonable person in Gerald's position would have believed that Yetman and other providers were not going to give any information, even if he demanded it.
¶26 Nor do the facts that the surgery was not completed and that it unexpectedly resulted in Nancy's death support only the inference that both those results were due to Yetman's negligence. On the contrary, both facts permit the inference that Nancy's death was, in Gerald's words, a "tragic and unfortunate, but a 'normal' or 'routine', surgical death," particularly in light of the more problematic parts of her health history noted above. While the fact that a plaintiff "kn[ows] the surgery was 'not satisfactory' " may support the inference that the plaintiff knew enough to have discovered the doctor's negligence, Clark v. Erdmann , 161 Wis. 2d 428, 448-49, 468 N.W.2d 18 (1991), such knowledge together with all of the other undisputed facts here may also support the inference that Nancy's death was a "normal" death due to complications from heart surgery. See Nowatske v. Osterloh , 198 Wis. 2d 419, 443, 543 N.W.2d 265 (1996) ("[W]e see no reason why proof of a bad result should constitute proof of negligence on the part of the physician.") (quoted source omitted); Francois v. Mokrohisky , 67 Wis. 2d 196, 201, 226 N.W.2d 470 (1975) (medicine is "not an exact science, and even the very best of [physicians] can be wrong in diagnosis or procedure"); WIS JI- CIVIL 1023 ("A doctor is not negligent, however, for failing to use the highest degree of care, skill and judgment or solely because a bad result may have followed his surgical procedure."). In sum, a reasonable inference from this record is that a layperson would not have had objective reasonable evidence of medical malpractice because of the bad result.
2. After Nancy's Death
¶27 Second, Yetman argues that "[a] reasonably diligent person would ... redouble his efforts to get answers after his wife died." As above, the hole in Yetman's argument is that there is a reasonable inference from the undisputed facts that those "answers" were not reasonably accessible to or within reach of anyone in Gerald's position, after Nancy died.
¶28 Yetman points to nothing in the record supporting the inference that the hospital would have given Gerald any information regarding Nancy's death, or regarding the fact of and reasons for Yetman's subsequent termination. A reasonable inference (at the very least) is that the hospital would have not given Gerald any information other than that Yetman was no longer employed at the hospital, and that a reasonable person in Gerald's position, believing that to be the case, would have addressed no further inquiries to the hospital. A jury should consider that reasonable inference in deciding whether Gerald exercised reasonable diligence.
¶29 Moreover, even if a reasonable person in Gerald's position may have been able to find out that Yetman was no longer employed at the hospital several months after Nancy's death, such as by looking at the hospital's website, Yetman's leaving his employer does not lead to the inescapable inference that the same physician committed medical malpractice. Instead, a jury should weigh that fact and the other facts to determine if Gerald exercised reasonable diligence.
¶30 Similarly, even if a reasonable person in Gerald's position may have been able to find out that Yetman surrendered his medical license in Wisconsin three years after Nancy's death, that fact does not lead only to the inference that Yetman committed medical malpractice. A reasonable inference that can be drawn from that fact, even when considered with all other facts, is that Yetman moved to another state and no longer needed a license to practice in Wisconsin. Moreover, there is nothing in this record to show that there was an explanation available to the public (including Gerald) as to why Yetman no longer had a license to practice in Wisconsin.
¶31 Finally, Yetman argues that a reasonably diligent person would have made efforts to access "most obviously, [Nancy's] medical records" after her death, and suggests that Gerald's "choice" not to obtain those records was not reasonable.[4] In considering that assertion, the "reasonable person" mentioned in the applicable test must be placed in the same circumstances as Gerald. Carlson , 167 Wis. 2d at 353. And, the only evidence in the record is that Gerald could not afford to obtain the medical records. More specifically, Gerald stated in his affidavit and at his deposition that the records were "very expensive," and he could not afford to procure the records because of his financial condition. Yetman does not dispute these points and, as a result, those facts are conceded for purposes of the summary judgment analysis. For that reason, in applying the reasonable person test, it is not disputed that the medical records could not be obtained because of their cost.
¶32 Certainly, a plaintiff's financial condition cannot, by itself, be dispositive on the question of the exercise of reasonable diligence. However, it is appropriate and necessary to consider this undisputed fact collectively with other undisputed facts. As stated, under Wisconsin law regarding the exercise of reasonable diligence, information must be reasonably accessible and within a person's reach. Spitler , 148 Wis. 2d at 638. Without the means to pay for the medical records, a reasonable inference which may be drawn from that undisputed fact is that any reasonable person in Gerald's circumstances did not have reasonable access to the medical records, and those records were not within his reach. See Schmidt , 305 Wis. 2d 538, ¶24 (all reasonable inferences must be drawn in favor of the non-movant on summary judgment).
¶33 This leads to the conclusion that a jury should consider that fact, among other facts, in determining whether Gerald exercised reasonable diligence under these circumstances. The question here is not whether a hypothetical person with sufficient funds to obtain the records would have taken certain actions. The test requires that the reasonable person be placed in the same particular circumstances Gerald was in. And, without the medical records, a reasonable inference is that there is no more than a hunch as to what, if anything, may have gone wrong related to Nancy's death, and a hunch is insufficient to trigger the statute of limitations. Borello v. U.S. Oil Co. , 130 Wis. 2d 397, 414, 388 N.W.2d 140 (1986).
CONCLUSION
¶34 After reviewing the undisputed facts collectively, we conclude that summary judgment should not have been granted in favor of Yetman. Instead, we conclude that there are competing reasonable inferences from the undisputed facts in this case that require a jury to determine whether Gerald exercised reasonable diligence under these circumstances. To be clear, we do not conclude that Gerald exercised reasonable diligence. As noted in Wisconsin case law, that is a decision for a jury to make. Accordingly, we reverse and remand to the circuit court for further proceedings.
By the Court. -Order reversed and cause remanded for further proceedings.
Not recommended for publication in the official reports.

Gerald Glumske brought this action in his personal capacity as well as in his capacity as special administrator of the Estate of Nancy A. Glumske. For simplicity, we will refer solely to Gerald when describing the appellants' arguments. Because Gerald and his late wife Nancy share a surname, we will refer to them individually by their first names. Finally, although various defendants are parties to this appeal, we will refer exclusively to Yetman.

All references to the Wisconsin statutes are to the 2017-18 version unless otherwise noted. The text of the relevant statutes has remained unchanged at all times pertinent to this litigation.

Gerald also brought a negligent-credentialing claim against the hospital, but the parties make no arguments addressing that claim separately from the negligent-care claim. Accordingly, we follow the parties' lead and do not address the credentialing claim separately from the negligent-care claim.

Gerald had the right to obtain his wife's medical records after she died. See Wis. Stat. § 146.82(1) (patient health care records may be released to "a person authorized by the patient") and Wis. Stat. § 146.81(5) (the spouse of a deceased patient is a "person authorized by the patient").